Leonard Eugene **KEEN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–01–00017–CR.

Court of Appeals of Texas, Tyler.

Aug. 14, 2002.

Forrest K. Phifer, Rusk, for Appellant.

Elmer C. Beckworth, Rusk, for State.

Panel consisted of GOHMERT, JR., C.J., WORTHEN, J., and GRIFFITH, J.

JIM WORTHEN, Justice.

Appellant Leonard Eugene Keen appeals his conviction for the offense of criminal solicitation of capital murder for which he was sentenced to life in prison. Appellant presents four issues for our consideration. We affirm.

### BACKGROUND

In late September of 1999, Appellant was incarcerated in the Cherokee County jail in the same cell with Michael Greer ("Greer"), John Elrod ("Elrod"), and others. While in that jail cell, Appellant made two lists, in his own handwriting, naming at least twelve people and explaining their relationships to him and to one another. He listed the addresses of some of the people, their places of employment, and what type of car they drove. Appellant wrote down the ages of some of the people on the list, about half of whom were children. He drew a map to the residence of one woman and her children who were on one list and a map to his own residence. Appellant made a list of monetary figures totaling $5,000.00, and Appellant wrote a note to his wife asking her to give "Mike" $5,000.00.

At trial, Greer told the jury that Appellant offered him $5,000.00 to kill the people on the lists and burn down Appellant's house and that the lists, the notes, and the maps were provided to him by Appellant to facilitate the crimes. Greer testified that Appellant told him he had already paid another man to kill one of the women on the list, but before the man could do it, he died in an accident.

Elrod told the jury that he heard Appellant ask Greer to kill the people on the lists and saw Appellant make the lists and draw the maps. Elrod testified that Appellant drew two maps to his own house while they were in the cell together: one for Elrod to give his father who wanted to see the property, which was for sale, and another for Elrod to use to locate the house to burn it down.

Greer told his attorney that Appellant had tried to hire him to kill several people and turned over Appellant's writings to him. Greer's attorney contacted the District Attorney's investigator who contacted the Sheriff's Department. Gina Hopson ("Hopson"), who was a Deputy with the Cherokee County Sheriff's Department in September of 1999, told the jury that all of the people on the lists made by Appellant were potential witnesses in cases pending against Appellant during the time that he was in the county jail with Greer and Elrod. Hopson told the jury that several of the people on the lists were alleged victims of Appellant.

Appellant testified that the lists and the map to the witness's house were made at Greer's and Elrod's insistence to give to their attorney, whom Appellant wanted to hire, to use in investigating the charges against him. He told the jury that he drew only one map to his own home, and it was made for Elrod's father who was interested in buying the property. Appellant testified that the note to his wife was

written at Greer's insistence and was part of a game Greer was playing. He said the note listing the monetary values was made in reference to the value of the house. On cross-examination, Appellant testified that he had been indicted for indecency with a child and that one of the people on the lists was the alleged victim. Appellant conceded that if the people on the lists had been killed, other cases pending against him could not have been prosecuted.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ In his first issue, Appellant contends that he was denied the effective assistance of counsel at trial. The standard of review for ineffective assistance of counsel is enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim. App.1986). The *Strickland* test requires a two-step analysis:

1. Did the attorney's performance fail to constitute "reasonably effective assistance," *i.e.*, did the defense attorney's representation fall below an objective standard of reasonableness under prevailing professional norms?

2. If so, was there a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different?

*See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App.2000). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Tong*, 25 S.W.3d at 712. Appellant is required to establish his claims by a preponderance of the evidence. *Id.* Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Id.* An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Id.* Our review of counsel's representation is highly deferential. *Tong*, 25 S.W.3d at 712. We indulge a strong presumption that counsel's conduct falls within a wide range of reasonably professional representation. *Id.* The burden is on Appellant to overcome that presumption. *See Burruss v. State*, 20 S.W.3d 179, 186 (Tex.App.-Texarkana 2000, pet. ref'd).

■ In the case at hand, Appellant complains that trial counsel failed to challenge the indictment, failed to file and pursue pre-trial motions, failed to raise a speedy trial violation, failed to call certain witnesses to rebut the State's evidence and to corroborate Appellant's evidence, and failed to challenge testimony of witnesses who violated "the rule." Appellant argues that such failures collectively fall short of the minimum acceptable requirements of effective assistance. However, even assuming *arguendo* that trial counsel's alleged deficiencies satisfy the first prong of the *Strickland* test, Appellant must still affirmatively prove prejudice. *See id.* Appellant's brief is devoid of any cogent argument that but for counsel's alleged unprofessional errors, there exists a reasonable probability that the result of the proceedings would have been different. Because Appellant has failed to satisfy his burden under *Strickland*, we cannot hold that trial counsel was ineffective. Appellant's first issue is overruled.

### MOTION FOR NEW TRIAL

■ In his second issue, Appellant contends that the trial court erred by fail-

ing to hold an evidentiary hearing on his motion for new trial. A defendant may file a motion for new trial before, but no later than thirty days after, the date when the trial court imposes or suspends sentence in open court. TEX.R.APP. P. 21.4(a). Within thirty days after the date on which the trial court imposes or suspends sentence in open court, but before the trial court overrules any preceding motion for new trial, a defendant may file one or more amended motions for new trial. TEX.R.APP. P. 24.1(b). A defendant does not have an absolute right to a hearing on a motion for new trial. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex.Crim.App.1993). To obtain a hearing on a motion for new trial, a defendant must present the motion within ten days of filing, unless the trial court in its discretion permits the motion to be presented and heard within seventy-five days of the date the court imposes or suspends sentence in open court. TEX.R.APP. P. 21.6; *Sexton v. State*, 51 S.W.3d 604, 609 (Tex. App.-Tyler 2000, pet. ref'd). Merely filing a motion for new trial alone does not satisfy the presentment requirement. *Carranza v. State*, 960 S.W.2d 76, 78 (Tex.Crim. App.1998). The term "present" means "the record must show the movant for a new trial sustained the burden of actually delivering the motion for new trial to the trial court or otherwise bringing the motion to the attention or actual notice of the trial court." *Id.* at 79. Examples of "presentment" include obtaining the trial court's ruling on the motion for new trial, the judge's signature or notation on a proposed order, or a hearing date on the docket. *Id.* The trial court must then rule on a motion for new trial within seventy-five days after the defendant was sentenced. TEX.R.APP. P. 21.8(a). If the court does not rule within this time, the motion is deemed overruled by operation of law. TEX.R.APP. P. 21.8(c). Once the seventy-five days expires, a defendant may not

complain of the trial court's failure to grant a new trial because the trial court has no authority to do so. *Baker v. State*, 956 S.W.2d 19, 25 (Tex.Crim.App.1997); *Sexton*, 51 S.W.3d at 609. It is the defendant's burden to ensure that the hearing is set on a date within the trial court's jurisdiction. *See Baker*, 956 S.W.2d at 24. Any action on a motion for new trial after this time is a nullity. *State ex rel. Cobb v. Godfrey*, 739 S.W.2d 47, 49 (Tex.Crim.App. 1987); *Meek v. State*, 628 S.W.2d 543, 547 (Tex.Crim.App.1982).

█ The trial court sentenced Appellant in open court on January 10, 2001. Appellant filed a motion for new trial on January 26, 2001, and a "first supplemental" motion for new trial on February 14, 2001. The motions were overruled by operation of law on March 26, 2001, the seventy-fifth day after the day Appellant was sentenced in open court. There is no evidence in the record that Appellant presented either motion to the trial court within ten days of filing, and the docket sheets do not reflect presentment. Appellant's argument that presentment of his motion for the appointment of an investigator proves presentment of his motion for new trial fails because there is no evidence in the record that the two motions were presented together, and his motion for new trial is not referenced in the motion for the appointment of an investigator. Because the record does not demonstrate that Appellant presented either of his motions for new trial to the trial court within the time prescribed by the Texas Rules of Appellate Procedure, we cannot say that the trial court erred by failing to hold an evidentiary hearing on the motions. Appellant's second issue is overruled.

### DISCIPLINARY RULES OF PROFESSIONAL CONDUCT

█ In his third issue, Appellant argues that because the case against him

relied on the testimony of informants, he was denied his right to due process and an investigation free from dishonesty, fraud, deceit, and misrepresentation. Specifically, Appellant contends that the use of informants by the prosecution violates Rule 8.04 of the Texas Disciplinary Rules of Professional Conduct which provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(3), *reprinted in* TEX. GOV'T.CODE ANN., TIT.2, subtit. G app. A(Vernon 1998)(TEX. STATE BAR R. art. X, § 9). Appellant has cited no Texas case that supports this proposition, nor are we aware of any. Moreover, even assuming *arguendo* that, by relying on confidential informants to support its case, the prosecution did violate Rule 8.04, such a violation would have no bearing on our disposition of the instant case.

■ Article 38.23 of the Texas Code of Criminal Procedure provides as follows:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.2002). The Texas Disciplinary Rules of Professional Conduct are not laws of the State of Texas as are contemplated by Article 38.23, and, thus, violation of one of these disciplinary rules in obtaining evidence for a criminal proceeding will not bar introduction of that evidence at trial. *Pannell v. State*, 666 S.W.2d 96, 98 (Tex. Crim.App.1984). The disciplinary rules simply govern the conduct of attorneys and make no provision for exclusion of evidence or reversal of cases based on attorney misconduct, if any. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04. Accordingly, Appellant's third issue is overruled.

## MOTION FOR MISTRIAL

■ In his fourth issue, Appellant argues that the trial court erred by denying his motion for mistrial made when Greer testified that Appellant had been accused of child molestation.[1] Specifically, Appellant contends that the probative value of the evidence was outweighed by the danger of unfair prejudice.

Before the State presented its case-in-chief, Appellant's counsel made his opening statement. In that opening statement, Appellant's counsel claimed that Greer and Elrod "conspired" to get Appellant indicted because they "don't like [Appellant] at all." When Appellant's counsel cross-examined Greer, he explored the defensive theory of a frame-up, asking, "Isn't it true, Mr. Greer, that this solicitation charge that [Appellant] is currently facing is essentially a concoction as between you and

---

1. Appellant also argues that the trial court should have granted his motion for mistrial in light of testimony by Geneva Hall, Chitina Williams, Lisa Wallace, and Yvette Portillo and in light of the prosecutor's final argument in the guilt/innocence phase of the trial. However, our review of the record reveals that Appellant neither made a motion for mis-trial based on the testimony of any of these witnesses or the prosecutor's argument nor reurged his prior motion. Furthermore, Chitina Williams, Lisa Wallace, and Yvette Portillo testified during the punishment phase of the trial. Therefore, we limit our consideration of Appellant's issue to the motion for mistrial made during the testimony of Greer.

Mr. Elrod to get him in trouble?" Shortly thereafter he asked, "You don't like [Appellant], do you?" Greer responded that he did not, and counsel asked, "And that's why you set him up; correct?"

During the State's redirect examination of Greer, the prosecutor urged in a bench conference that Appellant's counsel had "opened the door" to evidence that Appellant had been charged with child molestation by having Greer testify that he didn't like Appellant. Appellant's counsel disagreed, and the trial court responded, "Well, I think it's relevant as to why he doesn't like him whether you opened the door or not ... I think he can go into that matter anyway." Appellant's counsel then made an objection based on relevance and Rule 403 which the trial court overruled. The evidence that Appellant had been accused of child molestation was elicited from Greer by the State. Appellant's counsel then asked for a limiting instruction on the evidence, and the trial court instructed the jury,

> Ladies and gentlemen, the testimony that you just heard from this witness, you're not to consider it for the truth or the veracity of it, only for the purpose of why this gentleman was motivated to do whatever he did or did not do; Mr. Greer.

Appellant's counsel then made a motion for a mistrial which the trial court denied. ▆▆▆▆ Rule 403 of the Texas Rules of Evidence provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R. EVID. 403. Upon a proper objection, the trial court is required to conduct a Rule 403 balancing test and determine the admissibility of the evidence. *Rojas v. State*, 986 S.W.2d 241, 250 (Tex.Crim.App.1998); *Williams v. State*, 958 S.W.2d 186, 195 (Tex.Crim.App.1997). The trial court is not required to conduct its balancing test on the record, but the trial court is presumed to have engaged in the required balancing test once the trial court rules on a Rule 403 objection unless the record indicates otherwise. *Rojas,* 986 S.W.2d at 250; *Santellan v. State,* 939 S.W.2d 155, 173 (Tex.Crim.App.1997).

▆▆▆▆ In the instant case, the record is somewhat unclear as to the basis upon which the trial court admitted the evidence. However, an appellate court must uphold a trial court's evidentiary ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *See State v. Ross,* 32 S.W.3d 853, 855–56 (Tex.Crim.App. 2000); *Jones v. State,* 833 S.W.2d 118, 125 n. 15 (Tex.Crim.App.1992). We will not reverse the trial court's decision to admit the evidence unless the record shows that the trial court abused its discretion. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (*op. on reh'g*). This standard requires an appellate court to uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Powell v. State,* 63 S.W.3d 435, 438 (Tex.Crim.App.2001).

▆▆▆▆ Rule 404(b) provides that evidence of extraneous offenses is not admissible to prove the defendant's character and that he acted in conformity with his character, but the evidence may be admissible for other purposes such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident. TEX.R. EVID. 404(b). Also, such evidence may be admissible when it is relevant to a noncharacter conformity fact of consequence such as rebutting a defensive theory. *Powell,* 63 S.W.3d at 438. Furthermore, prosecutors are always entitled to offer evidence of motive, even if it involves an accused's extraneous

act of misconduct, if its relevancy value outweighs its potential for undue prejudice. *Gosch v. State,* 829 S.W.2d 775, 783 (Tex.Crim.App.1991); *Roy v. State,* 997 S.W.2d 863, 867 (Tex.App.-Fort Worth 1999, pet. ref'd).

Based on these principles, the trial court could have reasonably decided that the extraneous offense evidence at issue had noncharacter conformity relevance where it rebutted Appellant's defensive theory that he was framed and showed Appellant's motive to solicit capital murder. It is at least subject to reasonable disagreement whether the extraneous offense evidence made the defensive theory less probable since this evidence shows that Appellant had a motive to want victims and witnesses killed. *See id.; Montgomery,* 810 S.W.2d at 387–88 ("other crimes, wrongs, or acts evidence" has noncharacter conformity relevance where it logically serves to make less probable defensive evidence that undermines an elemental fact). We conclude that the trial court did not abuse its discretion in determining that the evidence had relevance apart from character conformity.

■■■■■ Evidence admissible under Rule 404(b) is still subject to exclusion under Rule 403 if it is more prejudicial than probative. *Alba v. State,* 905 S.W.2d 581, 585 (Tex.Crim.App.1995). We presume that the trial court engaged in a balancing test under Rule 403. In determining whether the probative value of the evidence is greatly outweighed by the danger of unfair prejudice, the trial court should weigh the following factors: (1) its inherent probativeness, *i.e.,* how compellingly evidence of the extraneous misconduct serves to make more or less probable a fact of consequence; (2) the potential of the extraneous conduct to impress the jury in some irrational but nevertheless indelible way; (3) the amount of trial time need-

ed by the proponent to develop evidence of the extraneous misconduct such that the jury's attention is diverted from the charged offense; and (4) the degree of the proponent's "need" for the extraneous misconduct. *Wyatt v. State,* 23 S.W.3d 18, 26 (Tex.Crim.App.2000). The last inquiry includes three sub-parts: (1) does the proponent have other available evidence to show the fact of consequence that the extraneous misconduct is relevant to show? (2) if so, how strong is that other evidence? and (3) is the fact of consequence related to an issue that is in dispute? *Montgomery,* 810 S.W.2d at 390. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Id.* at 389; *Williams,* 958 S.W.2d at 196. The trial court should favor admission in close cases. *Montgomery,* 810 S.W.2d at 389.

Evidence of an extraneous sexual offense will always carry emotional weight and the danger of impressing the jury in an irrational and indelible way. However, it is at least subject to reasonable disagreement that introducing the evidence through Greer was less likely to irrationally inflame the jury than introducing the evidence through the testimony of the child victims. It is also at least subject to reasonable disagreement that evidence that Appellant was accused of child molestation showed that Appellant had a motive to solicit capital murder. The amount of trial time needed to develop this evidence was negligible, and the State's "need" for the evidence that Appellant was accused of the extraneous misconduct was arguably great. Our review of the record reveals no other evidence to rebut the defense theory of a frame-up or show Appellant's motive. We conclude that the trial court's decision to admit the evidence of an extraneous offense in this case fell within the zone of reasonable disagreement and, thus, was

not an abuse of discretion. Accordingly, Appellant's fourth issue is overruled.

The judgment of the

trial court is *affirmed.*