# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00455-CR

**Carl Manor, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 9024071, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Carl Manor of aggravated assault with a deadly weapon and, after finding that he had committed sufficient previous offenses to qualify him as a habitual offender, assessed sentence at life in prison. By five points of error, appellant complains about the timing of the disclosure of the victim's criminal record and the sufficiency of the evidence to prove that he did not act in self defense. We will affirm the conviction.

## BACKGROUND

It is undisputed that appellant stabbed Dale King with a barbecue fork after King requested that appellant repay ten dollars King loaned him. The factual dispute concerns whether appellant stabbed King as the aggressor or in self-defense.

King testified that he went to the parking lot of an apartment complex where his friends were barbecuing. He said appellant, Wilbert Hart, Sr., Wilbert Hart, Jr., and someone named Jim Bob were there. When King approached appellant to request repayment of a ten-dollar loan, appellant loudly indicated that the manner and timing of King's request insulted him. King testified that he did not move toward appellant and did not brandish any weapons; rather, King and Hart, Jr. walked away to a nearby car. Appellant then followed him, stabbed him with a barbecue fork, and threatened to "finish the job" by killing him. King suffered a collapsed lung and was hospitalized for a month.

King testified at the end of the defense's case about his criminal history. He admitted that he was convicted for attempted murder in 1986, and for misdemeanor assaults with bodily injury in 1991, 1993, and 1997. On cross-examination by the State, King stated that he was merely an accessory to the attempted murder in which his girlfriend stabbed his ex-girlfriend in his presence, and that he did not use a weapon in the assaults. Even though two of the assaults occurred during his probation, King successfully completed probation for the attempted murder offense.

Hart, Jr. confirmed King's version of events, except that he recalled that both King and appellant raised their voices during the initial dispute. Hart, Jr. said that King reached into Hart, Jr.'s El Camino to get a fishing pole to defend himself after appellant stabbed him. Hart, Jr. described both King and appellant as among his best friends. He said that appellant expressed regret about the altercation with King.

Austin Police Detective Deborah Acosta testified that she interviewed King after the incident. Her report indicated that King said he became concerned during the initial argument when he saw appellant put the barbecue fork up his sleeve—a detail missing from King's testimony.

Appellant also testified that Hart, Jr. and King were his friends, but that he was even better friends with Hart, Sr. He said that on the day of the barbecue he borrowed money to repay King the ten-dollar loan. When he believed that King was not going to appear, he bought supplies for the barbecue. Appellant testified that, from the time King arrived, King was verbally abusive toward him while demanding his money. Appellant also testified that appellant then asked Hart, Jr. to loan him the money, but Hart, Jr. did not have it. Appellant testified that, upon seeing the barbecue fork, King asked appellant if he planned to stab King. Although appellant said "no," King threatened to kill appellant, then reached under the seat of King's truck (not Hart, Jr.'s El Camino). Appellant testified that he knew that King and his family had a reputation for hurting people and feared that King was reaching for a gun to shoot him. Afraid for his life, appellant said he struck at King instinctively with the fork to stave off attack. He thought he had at most hit King on the arm. He testified that Hart, Jr. and King lied during their testimony about the sequence and nature of the altercation.

Wilbert Hart, Sr. testified that both King and appellant were friends. Hart, Sr. testified that appellant and King initially conversed normally. They both raised their voices when discussing the money, but did not seem to be arguing. He did not see the physical attack, but heard King say, "He hit me."

3

Marilyn Manor, appellant's sister-in-law, testified that she received a telephone call from Hart, Sr. on the night of the stabbing. She testified that Hart, Sr. told her appellant stabbed King because appellant believed that King was retrieving a gun.

## DISCUSSION

Appellant's complaints concern two areas—the sufficiency of the evidence and the late disclosure of King's criminal record. Appellant contends that the State failed to produce legally or factually sufficient evidence to prove that he did not act in self-defense. Appellant also asserts that the prosecutor violated professional rules of conduct by failing to disclose King's criminal record timely. He contends that the mid-trial disclosure hindered his preparation of a defense, thus violating his constitutional rights to effective counsel and due process. He also argues that the district court erred by overruling his request for continuance after the disclosure, and that his attorney was ineffective for failing to obtain a ruling that would have required pre-trial disclosure.

### Sufficiency of the evidence

Appellant does not challenge the sufficiency of the evidence to show the elements of the offense—he admits stabbing King—but contends that the State failed to prove beyond a reasonable doubt that appellant did not act in self-defense. A person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. Tex. Pen. Code Ann. § 9.31(a) (West 2003). A person may use deadly force in self-defense if he is justified in using force under section 9.31, a reasonable person in his situation would not have retreated, and he reasonably

4

believes deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id*. § 9.32. The jury was instructed in accord with these definitions. Appellant testified that he stabbed King to prevent King from shooting him.

The court of criminal appeals has recently written on the burdens at trial concerning defenses and the standard of review we must employ in reviewing the factual sufficiency of evidence supporting a rejection of defenses:

> [A] defendant bears the burden of production, which requires the production of some evidence that supports the particular defense. [*Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991)]. Once the defendant produces such evidence, the State then bears the burden of persuasion to disprove the raised defense. *Id*. at 913-14. The burden of persuasion is not one that requires the production of evidence, rather it requires only that the State prove its case beyond a reasonable doubt. *Id*. at 913. When a jury finds the defendant guilty, there is an implicit finding against the defensive theory. *Id*. at 914.
>
> . . . .
>
> When a defendant challenges the factual sufficiency of the rejection of a defense, the reviewing court reviews all of the evidence in a neutral light and asks whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence.

*Zuliani v. State*, 97 S.W.3d 589, 594-95 (Tex. Crim. App. 2003). The *Zuliani* decision did not alter the standard for legal sufficiency:

> In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.

*Saxton*, 804 S.W.2d at 914. Credibility determinations are solely within the jury's province and the jury is free to accept or reject the defensive evidence. *Id*.

We have reviewed the evidence adduced at trial. King and appellant told versions of events that differed in critical respects; appellant said King lied. The jury thus had to choose either King's version that he did not threaten appellant and simply walked away or appellant's version that King threatened to kill him and appeared to be retrieving a gun. Both versions had support from other witnesses. We conclude that the evidence is not too weak to support the jury's finding and that the finding is not against the great weight and preponderance of the evidence. We also conclude, after viewing all the evidence in the light most favorable to the prosecution, that a rational trier of fact could have found the essential elements of aggravated assault beyond a reasonable doubt and also could have found against appellant on the self-defense issue beyond a reasonable doubt. Accordingly, we find the evidence factually and legally sufficient to support the verdict and overrule points of error four and five.

**Late disclosure of criminal record**

By his second point of error, appellant contends that the State's failure to disclose King's prior offenses before trial violated rules of professional conduct and appellant's rights to effective assistance of counsel and due process. *See* U.S. Const. amends. VI, XIV; Tex. Const. art. I, §§ 13, 19; Tex. Disciplinary R. Prof'l Conduct 3.09(d) *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 1998) (Tex. State Bar R. art. X, § 9). Violations of the rules of professional conduct are not grounds for reversal of a criminal conviction unless the defendant can show the action constituting the violation of a disciplinary rule affected his substantial rights or deprived him

6

of a fair trial. *See Brown v. State*, 921 S.W.2d 227, 230 (Tex. Crim. App. 1996); *see also Keen v. State*, 85 S.W.3d 405, 412 (Tex. App.—Tyler 2002, pet. ref'd).

Criminal defendants are entitled to timely disclosure of exculpatory and mitigating evidence. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). Impeachment evidence is within the scope of the evidence that must be disclosed. *United States v. Bagley*, 473 U.S. 667, 676 (1985). To find reversible error under *Brady* and *Bagley*, a defendant must show that (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material—that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Under *Brady*, the defendant bears the burden of showing that, in light of all of the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure. *See Bagley*, 473 U.S. at 682. If exculpatory material is disclosed after trial has begun, the court must decide whether the defendant was prejudiced by the late disclosure—*i.e.*, whether the lateness of the disclosure prevented the defendant from using the material effectively. *State v. DeLeon*, 971 S.W.2d 701, 706 (Tex. App.—Amarillo 1998, pet. ref'd).

A determination concerning the materiality prong of *Brady* involves balancing the strength of the exculpatory evidence against the evidence supporting conviction. *See Bagley*, 473 U.S. at 683. A seemingly inconsequential piece of exculpatory evidence may take on added significance in light of other evidence at trial. *See Ex parte Richardson*, 70 S.W.3d 865, 871-73 (Tex. Crim. App. 2002) (defendant proved materiality and probability of acquittal by showing that

7

withheld evidence would have led to six police officers who would testify that star witness was untruthful).

Appellant contends that the late disclosure prevented him from making effective use of King's criminal history. Appellant does not claim he did not know of King's violent tendencies; indeed, appellant testified that he stabbed King because he knew the reputation King and his family had for being violent. Appellant does not claim that the late disclosure prevented the jury from hearing about the convictions; all four were disclosed during testimony at trial. Appellant contends, however, that the late disclosure prevented him from investigating the circumstances of King's offenses and from countering King's minimization of his role in the offenses (assertions that he did not use a weapon during his assaults and that he was essentially a bystander in the 1986 attempted murder). There is no evidence in the record or in the appellate brief what further investigation would have shown. Appellant did not re-examine King, either in front of or outside the presence of the jury, after he minimized his role in the offenses. There is no indication that any post-trial investigation revealed information that would have allowed appellant to counter King's minimization of his role in the offenses. This case is thus distinct from *Richardson*, in which the defendant learned after trial that she was denied evidence that would have led to the testimony of several police officers who would have impugned the credibility of the State's chief witness. *Richardson*, 70 S.W.3d at 871-72. Appellant has not shown that the lateness of the disclosure prevented him from effectively using King's criminal record. We overrule point two.

By point of error one, appellant contends that the district court erred by denying his motion for continuance made on the third day of trial. A court may grant a mid-trial continuance if

8

some unexpected event occurs during trial that no reasonable diligence could have anticipated and that takes the applicant so by surprise that a fair trial is impossible. Tex. Code Crim. Proc. Ann. art. 29.13 (West 1989). The standard of review for a denial of a motion for continuance is abuse of discretion. *See Duhamel v. State*, 717 S.W.2d 80, 83 (Tex. Crim. App. 1986). There is no basis for reversal if there is no record showing what evidence would have been produced had the continuance been granted. *See Peak v. State*, 522 S.W.2d 907, 909-10 (Tex. Crim. App. 1975).

Appellant has failed to show what substantive difference the denial of the continuance made. He complains that his counsel was unable to investigate King's previous convictions and mitigate King's minimization of his role in the offenses. Although the State points out that appellant failed to request a continuance or funds for an investigator upon learning of King's criminal history on the second day of trial, appellant did not know that King would minimize his role until he testified on the third day. The critical weakness in appellant's argument is that there is no showing what a continuance would have permitted him to discover and produce. There is no affidavit or bill of exceptions or proposed exhibit showing what evidence he failed to discover until it was too late, so there is no showing that the result would have been different had the court granted the continuance. Without such a record, the record reveals no harm and we cannot reverse. *See Peak*, 522 S.W.2d at 909-10. We overrule point one.

The same weakness undermines point of error three, by which appellant complains that his counsel was ineffective for failing to get a pretrial ruling on his motion requesting production of King's criminal history. To establish ineffective assistance of counsel, an appellant must first show counsel's performance was deficient to the extent that it fell below a minimum objective level

9

of reasonableness under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88, (1984); *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Second, appellant must demonstrate that he was prejudiced by such performance, so that the result of the trial would have been different had appellant's counsel acted properly. *Strickland*, 466 U.S. at 691-92. We judge whether a defendant has received adequate assistance of counsel by the totality of the representation instead of by isolated acts or omissions. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

We find no reversible error in counsel's representation. Counsel represented appellant well in other ways, filing motions and examining witnesses—including eliciting the testimony about King's criminal record at trial. Even if counsel were deficient for failing to get a pretrial ruling, however, appellant has not shown resulting prejudice. There is no showing of how the presentation of appellant's case would have differed in any way. The jury heard King admit to his criminal record. The jury also heard King downplay his involvement, but there is no showing how appellant could have countered this testimony, even if he had received pretrial notice that it was going to be introduced. There is no showing that the result of the trial would have been different if counsel had obtained a pretrial disclosure of King's record. Appellant has failed to show prejudice. We overrule point three.

**CONCLUSION**

We conclude that the evidence is legally and factually sufficient to support the jury's rejection of appellant's claim of self-defense. We also conclude that there is no showing that the late

10

production of King's criminal record affected the verdict, and therefore no showing that appellant received harmfully ineffective counsel.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   July 11, 2003

Do Not Publish

11