Affirmed and Opinion filed July 31, 2003














Affirmed and
Opinion filed July 31, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00815-CR

____________

 

KEEPER RAY HUDSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

__________________________________________

 

On Appeal from
the 338th District Court

Harris County, Texas

Trial Court
Cause No. 906,051

 

__________________________________________

 

O P I N I O
N

            Appellant,
Keeper Ray Hudson, was charged with aggravated assault with a deadly weapon, a
felony.  The charge was enhanced with two
prior felonies, both for aggravated assault. 
Appellant entered a plea of not guilty to the offense and “true” to the
enhancement allegations.  The jury found
appellant guilty as charged, made an affirmative finding of a deadly weapon,
and found both enhancement paragraphs true. 
Punishment was assessed at confinement for life.  In two points of error, appellant contends
that the trial court erred by allowing, during the guilt/innocence stage of
trial, evidence of appellant’s use of a knife in 








a
previous assault on the complainant because the evidence was (1) not relevant
and (2) its prejudicial effect outweighed its probative value.  We affirm.

I.  Factual
Background

            Appellant and his estranged wife,
Angela, had a tumultuous relationship. 
In 1992, appellant was convicted of aggravated assault against Angela.  In 1995, appellant was again convicted of
assault against Angela and in 1997, received a five year prison sentence for
yet another aggravated assault against her. 
After the 1997 conviction, appellant and Angela ceased living together
as husband and wife, but maintained contact. 
Apparently, appellant wanted to reconcile, but Angela did not.

            The evidence regarding the subject
offense established that on the morning of April 9, 2001, appellant telephoned Angela and told her he would
give her a ride to a paternity test that had been scheduled for Angela’s
six-month old child.  A short while
later, appellant entered Angela’s apartment carrying a duffel bag.  Appellant appeared nervous.  He emptied the duffel bag, removing from it a
plastic jug containing gasoline, matches, bailing wire, and a knife.  Appellant tied Angela’s wrists together.  Angela tried to escape and managed to run a
short distance out the front door, but appellant grabbed her leg and dragged
her back into the apartment.  Appellant
then tied her ankles with bailing wire. 
As Angela pleaded for her life, appellant stuck the knife to her side,
threatening to stab her.  Appellant then
doused Angela with the gasoline, struck a match and threw it on her, igniting
her.  Angela testified that as she
burned, she screamed in pain while her six-month old daughter watched.  Appellant threw another match on Angela and
more gasoline, causing a larger blaze. 

            After a neighbor entered the
apartment and intervened in the assault, appellant ran from the apartment.  He was chased by neighbors and subsequently
caught by the police.  Appellant was
holding the knife used in the assault when the police apprehended him.  Angela suffered severe, third degree burns
over 45-50 percent of her body.

            Appellant testified at trial.  He did not deny setting Angela on fire.  Appellant’s defense was that he was
delusional during the incident, believing Angela was a witch trying to destroy
him and his children.

II.  Extraneous
Evidence

            On appeal, appellant argues that the
trial court erred in allowing the prosecution to question him, during the
guilt/innocence phase of the trial, concerning his use of a knife in a previous
assault on Angela[1]
because the question was irrelevant and inadmissible character evidence under
Texas Rules of Evidence 403 and 404.  He
argues further that the question was inadmissible for impeachment purposes
under Texas Rules of Evidence 608 and 609. 
The State contends that because appellant’s defensive theory was that he
was delusional and his assault against Angela was an aberration, the evidence
was relevant and properly admitted.

            During the guilt/innocence phase of
the trial, appellant’s attorney questioned him regarding his previous assaults
on Angela: 

Q.        You
– as a matter of fact, there was some other assault charges on you, weren’t
you, with Angela?

A.        Yes.

Q.        Correct?

A.        Yes,
there was.

Q.        Would
she call the police on you a lot?

A.        Yes,
she would.

Q.        All
right. And actually you have two cases against her for assault; is that
correct?

A.        That’s
right.

Q.        You’ve
actually done time on the cases, haven’t you?

            A.        Yes, I
have.

 

            Following this testimony, the
prosecutor questioned appellant regarding each of his convictions for assault
against Angela:  

            Q.        Isn’t it
true, sir, that in the 248th District Court of Harris
 County, Texas, in Cause No. 635705, you were convicted of
aggravated assault, a felony against Angela Hudson back on June 12th of 1992
and placed on a four-year deferred adjudication?

            A.        Yes.

            * * * * 

            Q.        Now, in
April 12th of 1995, you were again convicted in Cause No. 9514323 in County
Court 6 for assault on Angela Hudson?

            A.        Yes.
Uh-huh.

            * * * * 

            Q.        The 208th
District Court in Cause No. 738811, isn’t it true that you were convicted on
January 17th of 1997 of aggravated assault against Angela Hudson and sentenced
to five years in prison?

            A.        Yes.

 

            Subsequently, the prosecutor asked
appellant if during those previous assaults against Angela he had used a
knife.  Appellant’s attorney objected on
grounds that the question was “improper” stating, “the impeachment purposes is
improper and the prejudicial effect at this point is so overwhelming that not
only is it irrelevant under 402, but under 403 the prejudicial effect far
outweighs its probative value.”  After
finding that the probative value of the evidence outweighed its prejudicial
effect, the trial court allowed the prosecutor to ask the question.[2]

Standard of Review

            Because trial courts are in the best
position to make the call on substantive admissibility questions, an appellate
court must review a trial court’s decision under an abuse of discretion
standard.  Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim.
App. 2001) (citing to Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh’g)).  Thus, the
trial court’s admissibility decision must be upheld when that decision is
within the “zone of reasonable disagreement.”  Id.; Couchman v. State, 3 S.W.3d 155, 158 (Tex.
App.—Fort Worth 1999, pet. ref’d).  

Impeachment Purposes

            Citing to Texas Rules of Evidence
608(b) and 609(a), appellant claims that the testimony concerning his use of a
knife during a previous assault was inadmissible because it was “improper
impeachment.”[3]  However, in the context of appellant’s
testimony, we conclude that these evidentiary rules are not applicable because
the evidence was elicited for purposes other than to attack appellant’s
credibility.  

            When evidence is being offered to
attack the credibility of a witness, both Texas Rules of Evidence 608 and 609
are applicable.  See Tex. R. Evid. 608(b) (“Specific instances of the conduct of
a witness, for the purpose of attacking or supporting the witness’ credibility
. . . “.); Tex. R. Evid.
609 (“For the purpose of attacking the credibility of a witness, . . .
.”).  However, if the contested evidence
is being offered for a reason other than impeachment, these rules do not come
into play.  See Olivares v. State, 785 S.W.2d 941, 945 (Tex. App.—El Paso 1990,
no pet.) (noting that Rule 608 was inapplicable because credibility evidence was
not at issue); see also DeLeon v. State, 77 S.W.3d 300, 313 (Tex. App.—Austin
2001, pet. ref’d) ) (“Impeachment means ‘to discredit
the veracity of a witness.’”).  

            As the record reflects, the State
questioned appellant regarding those previous convictions involving Angela and
appellant did not deny them.  The State
then questioned appellant regarding the knife. 
Because appellant admitted to those previous convictions, there was no
need for the State to attack his veracity on the issue.  Instead, the question was used to elicit
information indicating that in a previous assault, similar to the subject
offense, appellant had used a knife against Angela.  Thus, we are not dealing with general
credibility evidence, impeachment or rebuttal under Rules 608 or 609.

            Also, although appellant objected to
the question as improper impeachment, that does not establish the purpose in
eliciting the evidence.  Here, in
response to appellant’s objection, the State argued that the evidence was being
offered for another purpose.  While it
may be true that all State rebuttal evidence may have some impeaching effect,
an analysis of the admissibility of the contested evidence under Rules 608 and
609 would be inappropriate under these circumstances.  See
Olivares, 785 S.W.2d at 945 (noting that all State rebuttal evidence
necessarily has some impeaching effect and rejecting application of Rule 608
because the subject evidence provided “substantive evidence, not merely
impeachment”).  We conclude that the
extraneous evidence was elicited for a purpose other than impeachment, an issue
we discuss below.  




 








Relevance

            Turning to appellant’s relevance
argument, Texas Rule of Evidence 402 provides: “All relevant evidence is
admissible, except as otherwise provided by Constitution, by statute, by these
rules, or by other rules prescribed pursuant to statutory authority. Evidence
which is not relevant is inadmissible.” 
Evidence is relevant if it has any tendency to make the existence of any
fact that is of consequence to the determination of the action more or less
probable than it would be without the evidence. 
Tex. R. Evid.
401; Montgomery v. State, 810 S.W.2d
372, 386 (Tex. Crim. App. 1990) (op. on reh’g).  Relevancy is
not an inherent characteristic of any item of evidence, but exists only as that
item of evidence relates to a matter properly provable in a case.  Montgomery, 810
S.W.2d at 375.  Also, evidence need not
prove or disprove a particular fact to be relevant; it is sufficient if the
evidence provides a “small nudge” towards proving or disproving a fact of
consequence.  Id. at 376. 

            Although relevant, evidence of a
person’s bad acts or character is not admissible for the purpose of showing
that he acted in conformity therewith.  Robbins v. State, 88 S.W.3d 256, 259 (Tex. Crim. App. 2002); Powell,
63 S.W.3d at 438.  This principle is
rooted in the fundamental rule of criminal jurisprudence that an accused be
tried only for the offense charged and not for being a criminal or bad person
generally.  Rankin v. State, 974
S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh’g); Chatham v.
State, 889 S.W.2d 345, 350 (Tex. App.—Houston [14th Dist.] 1994, pet. ref’d).  However,
evidence of “other crimes, wrongs, or acts” is admissible where it has
relevance apart from its tendency to show character conformity.  Robbins,
88 S.W.3d at 259; Montgomery, 810
S.W.2d at 387.  Such evidence is
admissible if it logically serves to make more or less probable: (1) an
elemental fact; (2) an evidentiary fact that inferentially leads to an
elemental fact; or (3) defensive evidence that undermines an elemental
fact.  Montgomery, 810
S.W.2d at 387.  Any evidence that serves
these purposes is relevant beyond its tendency to prove character
conformity.  Id. 

            It is well settled that extraneous
offense and prior bad acts evidence is admissible to rebut a defensive
theory.  See, e.g., Robbins, 88 S.W.3d at 259; Powell, 63 S.W.3d at 439; Rankin,
974 S.W.2d at 718; Ransom v. State,
920 S.W.2d 288, 301 (Tex. Crim. App. 1994); Chatham, 889 S.W.2d at 350.  Rebuttal of a defense means introducing
evidence which contradicts some aspect of the defense itself.  Roberts
v. State, 29 S.W.3d 596, 601 (Tex. App.—Houston [1st
Dist.] 2000, pet. ref’d).  In raising a defensive theory, a defendant
opens the door for the State to offer rebuttal testimony concerning an
extraneous offense if the extraneous offense has characteristics common with
the offense for which the defendant is being tried.  Id;
Faison v. State, 59 S.W.3d 230, 242
(Tex. App.—Tyler 2001, pet. ref’d).  It is also true that extraneous offense
evidence that rebuts a defensive theory is relevant.  Rankin,
974 S.W.2d at 718.  Generally, the
defensive theory the State wishes to rebut through extraneous offense evidence
must be elicited on direct examination by the defense and cannot be elicited by
prompting or maneuvering by the State.  Roberts, 29 S.W.3d at 601.  

            A trial court is given wide latitude
to admit or exclude evidence of extraneous offenses.  Mozon v. State,
991 S.W.2d 841, 846 (Tex. Crim. App. 1999); Poole v. State, 974 S.W.2d 892, 897
(Tex. App.—Austin 1998, pet. ref’d).

            Here, appellant asserts that the
evidence regarding his use of the knife during the previous assault was not
relevant because it did not tend to make more or less probable his claim that
he suffered a delusion, causing him to commit the alleged offense.  Appellant argues further that because he
admitted assaulting Angela in the past and acknowledged setting her on fire,
the use of the knife had no relevance to the case other than character
conformity.  The State argues that the
evidence regarding the use of the knife was admissible because it refuted
appellant’s defensive theory and tended to make appellant’s guilty intent more
likely than it otherwise would have been. 
We agree.

            Through his testimony, appellant
asserted the defensive theory that he was delusional on the day of the offense.[4]  Specifically, on direct questioning by his
attorney, appellant testified as follows:

Q. You heard Angela say that you didn’t seem to be the same person, the
same person she knew, you heard her say that?

            A. I wasn’t the same
person.

            Q. All right. Now do
you remember throwing gasoline on her?

A. Yes, I remember talking to her – trying to talk to her first, but I
couldn’t understand what she was saying back to me. 

            A. Do you remember
throwing gasoline on her?

            A. Yes, I do.

            Q. Do you remember
throwing a match?

            A. I don’t remember
throwing the match.

            Q. Do you remember
seeing flames on her?

            A. Yes, I remember
seeing the flaming coming up on her.

            Q. When you saw flames
come up on her, what did you do?

A. Well, at first – as far as I can remember I didn’t do nothing, but
just sit there and look at her because in my mind she was a witch. 

 

            In addition to this testimony,
appellant stated: “It was like a dream I was in.  A dream, all I knew.”[5]  Appellant also testified that as Angela was
burning, she came towards him and when he touched her, to turn her, he “came to
his senses” and “woke up from a dream.” 
The following testimony was also elicited from appellant by his
attorney:

            Q. Now, later on did
you talk to the police and give them a statement?

            A. Yes, I did.

            Q. You didn’t tell
them the same story you’re telling this jury, did you?

            A. Oh, no.

            * * * * 

            Q. Why is it that you
told the police a different story?

A. Because if a person’s mind went where mine went – and that was the
first time my mind had ever went out of – into delusion like that. You don’t
know how to explain it to anybody.

            Q. Didn’t think they
would believe you?

            A. I didn’t think
anybody would believe this.

Q. All right. Was it your intention though, – all right. Let me
rephrase the question.  Did you know when
you went in there that you were going to burn your wife up?

A. Not my wife. In my mind she was a witch trying to destroy me and my
children. 

 

            Thus, appellant’s testimony raised
the theory that his behavior on the day of the offense was an aberration of
sorts.  The fact that appellant had
previously assaulted Angela using a weapon made this defensive theory less
probable because it directly contradicted the idea that his violent behavior
towards Angela was a behavioral anomaly. 
Therefore, the extraneous evidence was relevant to appellant’s defensive
theory, a fact of consequence other than character conformity.  

            Moreover, the fact that appellant
admitted to committing the offense does not diminish the relevancy of the
evidence.  Because the evidence went to
rebutting his defensive theory, as opposed to identity or something such as that,
his admission regarding the offense did not impact the relevance of the
evidence.  Indeed, by admitting to
setting Angela on fire, appellant’s mental state and intent on the day in
question arguably became the only material issue in the case.  

            Furthermore, although the subject
offense involved setting Angela on fire, appellant’s use of a knife during the
attack shared a characteristic common with the previous assault.  Appellant’s testimony opened the door to the
State’s question by implying that his behavior on the day of the subject offense
was somehow out of character.  In asking
the question concerning the knife, the State established that appellant had
previously used a knife in an assault on Angela and thus, the subject assault
was not such an anomaly.  See Norris v. State, 902 S.W.2d 428, 442
(Tex. Crim. App. 1995) (noting that appellant had
opened the door to questioning regarding the length of time served on
appellant’s previous conviction); see
also Liendo v. State, No. 03-97-00114-CR, 1998 WL
54024 at *1 (Tex. App.—Austin 1998, no pet.) (not designated for publication)
(finding that the appellant had “opened the door” to question regarding
extraneous offense evidence).  Based on
this, the trial court was within its discretion to conclude that the evidence
regarding the knife had non-character conforming relevance. 

            Assuming arguendo that the evidence was
not admissible to rebut appellant’s defensive theory, we find it was admissible
to show appellant’s intent.  See Keen v. State, 85 S.W.3d 405, 413
(Tex. App.—Tyler 2002, pet. ref’d) (“an appellate
court must uphold a trial court’s evidentiary ruling if it . . . is correct
under any theory of law applicable to the case); Ludwig v. State, 969 S.W.2d 22, 30 (Tex. App.—Fort Worth 1998,
pet. ref’d) (“A trial court’s ruling will be affirmed
if it is correct under any legal theory.”). 
Intent is a contested issue for purposes of justifying the admission of
extraneous offense evidence if the required intent for the subject offense
cannot be inferred from the act itself or if the defendant presents evidence to
rebut the inference that the required intent existed.  Id.  (“Once the defendant claims lack of intent .
. . the State is allowed to prove intent through evidence of other crimes,
wrongs, or acts”); see also Bradshaw v.
State, 65 S.W.3d 232, 236 (Tex. App.—Waco 2001, no pet.) (“When a defendant
claims his act was free from criminal intent, extraneous offenses are relevant
to prove guilty intent.”).  

            Once a defendant’s intent to commit
the offense charged is at issue, “the relevance of an extraneous offense
derives from the doctrine of chances — the instinctive recognition of that
logical process which eliminates the element of innocent intent by multiplying
instances of the same result until it is perceived that this element cannot explain
them all.”  Brown v. State, 96 S.W.3d 508, 512 (Tex.
App.—Austin 2002, no pet.).  The doctrine
applies when there is a similarity between the charged and extraneous offenses,
because it is the “improbability of a like result being repeated” by chance that
gives the extraneous offense probative weight. 
Id.  

            When appellant was questioned
regarding his intent to hurt Angela he stated that he did not intend to burn
her, he had intended to burn a witch. 
Thus, appellant put his intent directly in issue.  See
Robbins, 88 S.W.3d at 261.  The State
elicited evidence indicating that appellant had intended to hurt Angela because
he had similarly assaulted her, using a knife, on a previous occasion.  The evidence also served to rebut his claim
of intending to burn a witch, because it refuted the delusional defense.  

            In sum, the extraneous offense
evidence was relevant to both rebut appellant’s defensive theory and to
establish his intent.  Therefore, the
evidence had relevance other than its character conformity.  Certainly, we cannot say the court’s decision
to admit the testimony was outside the zone of reasonable disagreement whether
used to rebut the defensive theory or to prove intent.  

Rule 403 

            In his second point of error,
appellant contends that even if the evidence was relevant, it should have been
excluded because its prejudicial effect outweighed its probative value.

            Even relevant evidence is subject to
exclusion under Rule 403 if its probative value is substantially outweighed by
the danger of unfair prejudice.  See Tex.
R. Evid. 403; Rankin, 974 S.W.2d at 710; Keen,
85 S.W.3d at 414.  Commonly, most
evidence offered by the State will be prejudicial to a defendant.  Deleon,
77 S.W.3d at 315.  However, only evidence
that is unfairly prejudicial must be
excluded.  Id.; Tex. R. Evid. 403.  “Unfair evidence is that which has an undue
tendency to suggest that a decision be made on an improper basis.”  DeLeon, 77 S.W.3d at 315 (citing Montgomery, 810
S.W.2d at 389).  There is a presumption
that relevant evidence is more probative than prejudicial.  Montgomery, 810
S.W.2d at 389; Keen, 85 S.W.3d at
414. 

            In determining whether the probative
value of the evidence is substantially outweighed by the danger of unfair
prejudice, a trial court should weigh the following factors: (1) the inherent
probative value of the evidence, or in other words, how compellingly the
extraneous offense evidence serves to make a fact of consequence more or less
probable; (2) the potential the extraneous conduct has to impress the jury “in
some irrational but nevertheless indelible way;” (3) the amount of trial time
needed by the proponent to develop the evidence, during which the jury will be
distracted from consideration of the indicted offense; and (4) the degree of
the proponent’s need for the extraneous conduct evidence to prove a fact of
consequence, i.e., does the proponent
have other probative evidence available to him to establish this fact.  See
Wyatt v. State, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000); Montgomery, 810
S.W.2d at 389–90.  On review, we are
mindful that the “trial court is in a superior position to evaluate the impact
of the evidence” and therefore, we will reverse the trial court’s finding under
Rule 403 only after a clear abuse of discretion.  Curtis
v. State, 89 S.W.3d 163, 170 (Tex. App.—Fort Worth 2002, pet. ref’d) (citing Mozon v. State,
991 S.W.2d 841, 847 (Tex Crim. App. 1999)). 

            In this case, there was ample
evidence establishing appellant’s guilt. 
Indeed, appellant testified that he did in fact set Angela on fire.  Angela also testified against appellant and
described the horrific circumstances of the offense.  In light of the amount of evidence presented,
we cannot say that the question concerning appellant’s prior use of a knife
impressed the jury in any irrational or indelible way.  See Stefanoff v. State, 78 S.W.3d 496, 503 (Tex.
App.—Austin 2002, pet. ref’d) (finding evidence not
erroneously admitted due to large amount of evidence establishing defendant’s
guilt).  In fact, because of the amount
of 

 class=Section4>

evidence
establishing appellant’s guilt, his defensive theory regarding his mental state
became even more material to the presentation of his case and consequently, the
State’s need for the evidence also increased. 


            The extraneous offense evidence was
elicited after the State had presented its case-in-chief.  Prior to that time, the State had presented
little evidence that went to rebutting appellant’s defensive theory.  Moreover, other than the question regarding
appellant’s use of the knife in the prior assault, the State did not raise the
issue again during the guilt/innocence phase, nor raise the issue of the prior
convictions.  Based upon the record, we
cannot say that the evidence at issue unfairly prejudiced appellant and
influenced the jury to decide the case on an improper basis.  Nor can we say that the trial court’s
determination to admit the evidence was outside the zone of reasonable
disagreement.  Accordingly, we conclude
that the trial court did not abuse its discretion in admitting the evidence and
overrule appellant’s points of error. 
The judgment of the trial court is affirmed.[6]

 

 

                                                                                    

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment
rendered and Opinion filed July 31,
 2003.

Panel
consists of Justices Anderson, Seymore, and Guzman.

Publish — Tex. R. App. P. 47.2(b).

 

 











            [1]  On appeal, appellant limits his contentions
to the admissibility of this particular evidence; therefore, our review is
limited to this issue.   





            [2]  Appellant’s attorney did not request a
limiting instruction pertaining to this question.  Once evidence is admitted without a proper
limiting instruction, it becomes a part of the general evidence and may be
considered for all purposes.  Arana v. State, 1 S.W.3d 824, 829 (Tex.
App.—Houston [14th Dist.] 1999, pet. ref’d).  





            [3]  Appellant does not argue that he was
improperly impeached by the questions concerning his convictions, instead he
only argues that eliciting the details of the conviction was improper
impeachment.  Appellant asserts that the
fact of conviction is admissible, while the details surrounding it are
not.  He further argues that if a witness
admits to a prior conviction, impeachment is complete and no record of the
conviction may be admitted.  Because we
conclude that the evidence at issue was not elicited to impeach appellant, we
do not address his assertions regarding this matter.  





            [4]  Appellant did not assert an insanity
defense.  The record indicates that
appellant’s competency to stand trial and his sanity were evaluated prior to
trial.  In those reports, appellant was
determined to be competent and legally sane.





            [5]  In his closing argument, appellant’s counsel
also made various references to appellant’s mental state, indicating that
appellant had lost his mind.





            [6]  Even assuming that the trial court had erred
in admitting the extraneous conduct evidence, we cannot conclude that the error
would require a reversal.  Any error
other than constitutional error must be disregarded if it does not effect a
substantial right.  Tex. R. App. P. 44.2(b); Peters v. State, 93 S.W.3d 347, 354
(Tex. App.—Houston [14th
Dist.] 2002, pet. ref’d).  Erroneous admission of an extraneous offense
does not constitute constitutional error.” 
Id.  In determining whether the error adversely
affected the jury’s decision, we consider the entire record, as well as the
character of the alleged error and how the error might have been considered
along with the other evidence in the record. 
Id.  Reiterating the reasoning above, because of
the vast amount evidence establishing appellant’s guilt, after examining the
entire record — including appellant’s testimony, Angela’s testimony and that of
the eyewitnesses — we cannot say that an erroneous admission of the prior
misconduct would warrant reversal.