**Keeper Ray HUDSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–02–00815–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 31, 2003.

Bridget Holloway, Houston, for appellees.

Allen C. Isbell, Houston, for appellants.

Panel consists of Justices ANDERSON, SEYMORE, and EVA A. GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

Appellant, Keeper Ray Hudson, was charged with aggravated assault with a deadly weapon, a felony. The charge was enhanced with two prior felonies, both for aggravated assault. Appellant entered a plea of not guilty to the offense and "true" to the enhancement allegations. The jury found appellant guilty as charged, made an affirmative finding of a deadly weapon, and found both enhancement paragraphs true. Punishment was assessed at confinement for life. In two points of error, appellant contends that the trial court erred by allowing, during the guilt/innocence stage of trial, evidence of appellant's use of a knife in a previous assault on the complainant because the evidence was (1) not relevant and (2) its prejudicial effect outweighed its probative value. We affirm.

### I. FACTUAL BACKGROUND

Appellant and his estranged wife, Angela, had a tumultuous relationship. In 1992, appellant was convicted of aggravated assault against Angela. In 1995, appellant was again convicted of assault against Angela and in 1997, received a five year prison sentence for yet another aggravated assault against her. After the 1997 conviction, appellant and Angela ceased living together as husband and wife, but maintained contact. Apparently, appellant wanted to reconcile, but Angela did not.

The evidence regarding the subject offense established that on the morning of April 9, 2001, appellant telephoned Angela

and told her he would give her a ride to a paternity test that had been scheduled for Angela's six-month old child. A short while later, appellant entered Angela's apartment carrying a duffel bag. Appellant appeared nervous. He emptied the duffel bag, removing from it a plastic jug containing gasoline, matches, bailing wire, and a knife. Appellant tied Angela's wrists together. Angela tried to escape and managed to run a short distance out the front door, but appellant grabbed her leg and dragged her back into the apartment. Appellant then tied her ankles with bailing wire. As Angela pleaded for her life, appellant stuck the knife to her side, threatening to stab her. Appellant then doused Angela with the gasoline, struck a match and threw it on her, igniting her. Angela testified that as she burned, she screamed in pain while her six-month old daughter watched. Appellant threw another match on Angela and more gasoline, causing a larger blaze.

After a neighbor entered the apartment and intervened in the assault, appellant ran from the apartment. He was chased by neighbors and subsequently caught by the police. Appellant was holding the knife used in the assault when the police apprehended him. Angela suffered severe, third degree burns over 45–50 percent of her body.

Appellant testified at trial. He did not deny setting Angela on fire. Appellant's defense was that he was delusional during the incident, believing Angela was a witch trying to destroy him and his children.

## II. EXTRANEOUS EVIDENCE

On appeal, appellant argues that the trial court erred in allowing the prosecution to question him, during the guilt/innocence phase of the trial, concerning his use of a knife in a previous assault on Angela[1] because the question was irrelevant and inadmissible character evidence under Texas Rules of Evidence 403 and 404. He argues further that the question was inadmissible for impeachment purposes under Texas Rules of Evidence 608 and 609. The State contends that because appellant's defensive theory was that he was delusional and his assault against Angela was an aberration, the evidence was relevant and properly admitted.

During the guilt/innocence phase of the trial, appellant's attorney questioned him regarding his previous assaults on Angela:

Q. You—as a matter of fact, there was some other assault charges on you, weren't you, with Angela?

A. Yes.

Q. Correct?

A. Yes, there was.

Q. Would she call the police on you a lot?

A. Yes, she would.

Q. All right. And actually you have two cases against her for assault; is that correct?

A. That's right.

Q. You've actually done time on the cases, haven't you?

A. Yes, I have.

Following this testimony, the prosecutor questioned appellant regarding each of his convictions for assault against Angela:

Q. Isn't it true, sir, that in the 248th District Court of Harris County, Texas, in Cause No. 635705, you were convicted of aggravated assault, a felony against Angela Hudson back on June 12th of 1992 and

---

1. On appeal, appellant limits his contentions to the admissibility of this particular evidence; therefore, our review is limited to this issue.

placed on a four-year deferred adjudication?

A. Yes.

* * * *

Q. Now, in April 12th of 1995, you were again convicted in Cause No. 9514323 in County Court 6 for assault on Angela Hudson?

A. Yes. Uh-huh.

* * * *

Q. The 208th District Court in Cause No. 738811, isn't it true that you were convicted on January 17th of 1997 of aggravated assault against Angela Hudson and sentenced to five years in prison?

A. Yes.

■ Subsequently, the prosecutor asked appellant if during those previous assaults against Angela he had used a knife. Appellant's attorney objected on grounds that the question was "improper" stating, "the impeachment purposes is improper and the prejudicial effect at this point is so overwhelming that not only is it irrelevant under 402, but under 403 the prejudicial effect far outweighs its probative value." After finding that the probative value of the evidence outweighed its prejudicial effect, the trial court allowed the prosecutor to ask the question.[2]

## STANDARD OF REVIEW

Because trial courts are in the best position to make the call on substantive admissibility questions, an appellate court must review a trial court's decision under an abuse of discretion standard. *Powell v. State,* 63 S.W.3d 435, 438 (Tex.Crim.App. 2001) (citing to *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g)). Thus, the trial court's admissibility decision must be upheld when that decision is within the "zone of reasonable disagreement." *Id.; Couchman v. State,* 3 S.W.3d 155, 158 (Tex.App.-Fort Worth 1999, pet. ref'd).

## IMPEACHMENT PURPOSES

■ Citing to Texas Rules of Evidence 608(b) and 609(a), appellant claims that the testimony concerning his use of a knife during a previous assault was inadmissible because it was "improper impeachment."[3] However, in the context of appellant's testimony, we conclude that these evidentiary rules are not applicable because the evidence was elicited for purposes other than to attack appellant's credibility.

When evidence is being offered to attack the credibility of a witness, both Texas Rules of Evidence 608 and 609 are applicable. *See* TEX.R. EVID. 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility ...".); TEX.R. EVID. 609 ("For the purpose of attacking the credibility of a witness, ...."). However, if the contested evidence is being offered for a reason other than impeachment, these

---

2. Appellant's attorney did not request a limiting instruction pertaining to this question. Once evidence is admitted without a proper limiting instruction, it becomes a part of the general evidence and may be considered for all purposes. *Arana v. State,* 1 S.W.3d 824, 829 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd).

3. Appellant does not argue that he was improperly impeached by the questions concerning his convictions, instead he only argues that eliciting the details of the conviction was improper impeachment. Appellant asserts that the fact of conviction is admissible, while the details surrounding it are not. He further argues that if a witness admits to a prior conviction, impeachment is complete and no record of the conviction may be admitted. Because we conclude that the evidence at issue was not elicited to impeach appellant, we do not address his assertions regarding this matter.

rules do not come into play. *See Olivares v. State*, 785 S.W.2d 941, 945 (Tex.App.-El Paso 1990, no pet.) (noting that Rule 608 was inapplicable because credibility evidence was not at issue); *see also DeLeon v. State*, 77 S.W.3d 300, 313 (Tex.App.-Austin 2001, pet. ref'd) ("Impeachment means 'to discredit the veracity of a witness.' ").

As the record reflects, the State questioned appellant regarding those previous convictions involving Angela and appellant did not deny them. The State then questioned appellant regarding the knife. Because appellant admitted to those previous convictions, there was no need for the State to attack his veracity on the issue. Instead, the question was used to elicit information indicating that in a previous assault, similar to the subject offense, appellant had used a knife against Angela. Thus, we are not dealing with general credibility evidence, impeachment or rebuttal under Rules 608 or 609.

Also, although appellant objected to the question as improper impeachment, that does not establish the purpose in eliciting the evidence. Here, in response to appellant's objection, the State argued that the evidence was being offered for another purpose. While it may be true that all State rebuttal evidence may have some impeaching effect, an analysis of the admissibility of the contested evidence under Rules 608 and 609 would be inappropriate under these circumstances. *See Olivares*, 785 S.W.2d at 945 (noting that all State rebuttal evidence necessarily has some impeaching effect and rejecting application of Rule 608 because the subject evidence provided "substantive evidence, not merely impeachment"). We conclude that the extraneous evidence was elicited for a purpose other than impeachment, an issue we discuss below.

### RELEVANCE

Turning to appellant's relevance argument, Texas Rule of Evidence 402 provides: "All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible." Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. TEX.R. EVID. 401; *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex.Crim. App.1990) (op. on reh'g). Relevancy is not an inherent characteristic of any item of evidence, but exists only as that item of evidence relates to a matter properly provable in a case. *Montgomery*, 810 S.W.2d at 375. Also, evidence need not prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a "small nudge" towards proving or disproving a fact of consequence. *Id.* at 376.

Although relevant, evidence of a person's bad acts or character is not admissible for the purpose of showing that he acted in conformity therewith. *Robbins v. State*, 88 S.W.3d 256, 259 (Tex.Crim.App. 2002); *Powell*, 63 S.W.3d at 438. This principle is rooted in the fundamental rule of criminal jurisprudence that an accused be tried only for the offense charged and not for being a criminal or bad person generally. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex.Crim.App.1996) (op. on reh'g); *Chatham v. State*, 889 S.W.2d 345, 350 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd). However, evidence of "other crimes, wrongs, or acts" is admissible where it has relevance apart from its tendency to show character conformity. *Robbins*, 88 S.W.3d at 259; *Montgomery*, 810 S.W.2d at 387. Such evidence is admissible if it logically serves to make more or

less probable: (1) an elemental fact; (2) an evidentiary fact that inferentially leads to an elemental fact; or (3) defensive evidence that undermines an elemental fact. *Montgomery*, 810 S.W.2d at 387. Any evidence that serves these purposes is relevant beyond its tendency to prove character conformity. *Id.*

 It is well settled that extraneous offense and prior bad acts evidence is admissible to rebut a defensive theory. *See, e.g., Robbins*, 88 S.W.3d at 259; *Powell*, 63 S.W.3d at 439; *Rankin*, 974 S.W.2d at 718; *Ransom v. State*, 920 S.W.2d 288, 301 (Tex.Crim.App.1994); *Chatham*, 889 S.W.2d at 350. Rebuttal of a defense means introducing evidence which contradicts some aspect of the defense itself. *Roberts v. State*, 29 S.W.3d 596, 601 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd). In raising a defensive theory, a defendant opens the door for the State to offer rebuttal testimony concerning an extraneous offense if the extraneous offense has characteristics common with the offense for which the defendant is being tried. *Id; Faison v. State*, 59 S.W.3d 230, 242 (Tex. App.-Tyler 2001, pet. ref'd). It is also true that extraneous offense evidence that rebuts a defensive theory is relevant. *Rankin*, 974 S.W.2d at 718. Generally, the defensive theory the State wishes to rebut through extraneous offense evidence must be elicited on direct examination by the defense and cannot be elicited by prompting or maneuvering by the State. *Roberts*, 29 S.W.3d at 601.

 A trial court is given wide latitude to admit or exclude evidence of extraneous offenses. *Mozon v. State*, 991 S.W.2d 841, 846 (Tex.Crim.App.1999); *Poole v. State*, 974 S.W.2d 892, 897 (Tex.App.-Austin 1998, pet. ref'd).

 Here, appellant asserts that the evidence regarding his use of the knife during the previous assault was not relevant because it did not tend to make more or less probable his claim that he suffered a delusion, causing him to commit the alleged offense. Appellant argues further that because he admitted assaulting Angela in the past and acknowledged setting her on fire, the use of the knife had no relevance to the case other than character conformity. The State argues that the evidence regarding the use of the knife was admissible because it refuted appellant's defensive theory and tended to make appellant's guilty intent more likely than it otherwise would have been. We agree.

Through his testimony, appellant asserted the defensive theory that he was delusional on the day of the offense.[4] Specifically, on direct questioning by his attorney, appellant testified as follows:

Q. You heard Angela say that you didn't seem to be the same person, the same person she knew, you heard her say that?

A. I wasn't the same person.

Q. All right. Now do you remember throwing gasoline on her?

A. Yes, I remember talking to her—trying to talk to her first, but I couldn't understand what she was saying back to me.

A. Do you remember throwing gasoline on her?

A. Yes, I do.

Q. Do you remember throwing a match?

A. I don't remember throwing the match.

---

4. Appellant did not assert an insanity defense. The record indicates that appellant's competency to stand trial and his sanity were evaluated prior to trial. In those reports, appellant was determined to be competent and legally sane.

Q. Do you remember seeing flames on her?

A. Yes, I remember seeing the flaming coming up on her.

Q. When you saw flames come up on her, what did you do?

A. Well, at first—as far as I can remember I didn't do nothing, but just sit there and look at her because in my mind she was a witch.

In addition to this testimony, appellant stated: "It was like a dream I was in. A dream, all I knew." [5] Appellant also testified that as Angela was burning, she came towards him and when he touched her, to turn her, he "came to his senses" and "woke up from a dream." The following testimony was also elicited from appellant by his attorney:

Q. Now, later on did you talk to the police and give them a statement?

A. Yes, I did.

Q. You didn't tell them the same story you're telling this jury, did you?

A. Oh, no.

* * * *

Q. Why is it that you told the police a different story?

A. Because if a person's mind went where mine went—and that was the first time my mind had ever went out of—into delusion like that. You don't know how to explain it to anybody.

Q. Didn't think they would believe you?

A. I didn't think anybody would believe this.

Q. All right. Was it your intention though,—all right. Let me rephrase the question. Did you know when you went in there that you were going to burn your wife up?

A. Not my wife. In my mind she was a witch trying to destroy me and my children.

Thus, appellant's testimony raised the theory that his behavior on the day of the offense was an aberration of sorts. The fact that appellant had previously assaulted Angela using a weapon made this defensive theory less probable because it directly contradicted the idea that his violent behavior towards Angela was a behavioral anomaly. Therefore, the extraneous evidence was relevant to appellant's defensive theory, a fact of consequence other than character conformity.

Moreover, the fact that appellant admitted to committing the offense does not diminish the relevancy of the evidence. Because the evidence went to rebutting his defensive theory, as opposed to identity or something such as that, his admission regarding the offense did not impact the relevance of the evidence. Indeed, by admitting to setting Angela on fire, appellant's mental state and intent on the day in question arguably became the only material issue in the case.

Furthermore, although the subject offense involved setting Angela on fire, appellant's use of a knife during the attack shared a characteristic common with the previous assault. Appellant's testimony opened the door to the State's question by implying that his behavior on the day of the subject offense was somehow out of character. In asking the question concerning the knife, the State established that appellant had previously used a knife in an assault on Angela and thus, the subject assault was not such an anomaly. *See Norris v. State*, 902 S.W.2d 428, 442 (Tex.Crim.App.1995) (noting that appellant had opened the door to questioning re-

---

**5.** In his closing argument, appellant's counsel also made various references to appellant's mental state, indicating that appellant had lost his mind.

garding the length of time served on appellant's previous conviction); *see also Liendo v. State,* No. 03–97–00114–CR, 1998 WL 54024 at *1 (Tex.App.-Austin 1998, no pet.) (not designated for publication) (finding that the appellant had "opened the door" to question regarding extraneous offense evidence). Based on this, the trial court was within its discretion to conclude that the evidence regarding the knife had non-character conforming relevance.

Assuming *arguendo* that the evidence was not admissible to rebut appellant's defensive theory, we find it was admissible to show appellant's intent. *See Keen v. State,* 85 S.W.3d 405, 413 (Tex. App.-Tyler 2002, pet. ref'd) ("an appellate court must uphold a trial court's evidentiary ruling if it ... is correct under any theory of law applicable to the case"); *Ludwig v. State,* 969 S.W.2d 22, 30 (Tex. App.-Fort Worth 1998, pet. ref'd) ("A trial court's ruling will be affirmed if it is correct under any legal theory."). Intent is a contested issue for purposes of justifying the admission of extraneous offense evidence if the required intent for the subject offense cannot be inferred from the act itself or if the defendant presents evidence to rebut the inference that the required intent existed. *Id.* ("Once the defendant claims lack of intent ... the State is allowed to prove intent through evidence of other crimes, wrongs, or acts"); *see also Bradshaw v. State,* 65 S.W.3d 232, 236 (Tex.App.-Waco 2001, no pet.) ("When a defendant claims his act was free from criminal intent, extraneous offenses are relevant to prove guilty intent.").

Once a defendant's intent to commit the offense charged is at issue, "the relevance of an extraneous offense derives from the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of inno-

cent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all." *Brown v. State,* 96 S.W.3d 508, 512 (Tex.App.-Austin 2002, no pet.). The doctrine applies when there is a similarity between the charged and extraneous offenses, because it is the "improbability of a like result being repeated" by chance that gives the extraneous offense probative weight. *Id.*

When appellant was questioned regarding his intent to hurt Angela he stated that he did not intend to burn her, he had intended to burn a witch. Thus, appellant put his intent directly in issue. *See Robbins,* 88 S.W.3d at 261. The State elicited evidence indicating that appellant had intended to hurt Angela because he had similarly assaulted her, using a knife, on a previous occasion. The evidence also served to rebut his claim of intending to burn a witch, because it refuted the delusional defense.

In sum, the extraneous offense evidence was relevant to both rebut appellant's defensive theory and to establish his intent. Therefore, the evidence had relevance other than its character conformity. Certainly, we cannot say the court's decision to admit the testimony was outside the zone of reasonable disagreement whether used to rebut the defensive theory or to prove intent.

### RULE 403

In his second point of error, appellant contends that even if the evidence was relevant, it should have been excluded because its prejudicial effect outweighed its probative value.

Even relevant evidence is subject to exclusion under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Tex.R. Evid. 403; *Rankin,* 974 S.W.2d at

710; *Keen,* 85 S.W.3d at 414. Commonly, most evidence offered by the State will be prejudicial to a defendant. *Deleon,* 77 S.W.3d at 315. However, only evidence that is *unfairly* prejudicial must be excluded. *Id.;* TEX.R. EVID. 403. "Unfair evidence is that which has an undue tendency to suggest that a decision be made on an improper basis." *DeLeon,* 77 S.W.3d at 315 (citing *Montgomery,* 810 S.W.2d at 389). There is a presumption that relevant evidence is more probative than prejudicial. *Montgomery,* 810 S.W.2d at 389; *Keen,* 85 S.W.3d at 414.

▆▆▆ In determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, a trial court should weigh the following factors: (1) the inherent probative value of the evidence, or in other words, how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable; (2) the potential the extraneous conduct has to impress the jury "in some irrational but nevertheless indelible way;" (3) the amount of trial time needed by the proponent to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the degree of the proponent's need for the extraneous conduct evidence to prove a fact of consequence, *i.e.,* does the proponent have other probative evidence available to him to establish this fact. *See Wyatt v. State,* 23 S.W.3d 18, 26 (Tex.Crim.App.2000); *Montgomery,* 810 S.W.2d at 389–90. On review, we are mindful that the "trial court is in a superior position to evaluate the impact of the evidence" and therefore, we will reverse the trial court's finding under Rule 403 only after a clear abuse of discretion. *Curtis v. State,* 89 S.W.3d 163, 170 (Tex. App.-Fort Worth 2002, pet. ref'd) (citing

*Mozon v. State,* 991 S.W.2d 841, 847 (Tex. Crim.App.1999)).

In this case, there was ample evidence establishing appellant's guilt. Indeed, appellant testified that he did in fact set Angela on fire. Angela also testified against appellant and described the horrific circumstances of the offense. In light of the amount of evidence presented, we cannot say that the question concerning appellant's prior use of a knife impressed the jury in any irrational or indelible way. *See Stefanoff v. State,* 78 S.W.3d 496, 503 (Tex.App.-Austin 2002, pet. ref'd) (finding evidence not erroneously admitted due to large amount of evidence establishing defendant's guilt). In fact, because of the amount of evidence establishing appellant's guilt, his defensive theory regarding his mental state became even more material to the presentation of his case and consequently, the State's need for the evidence also increased.

▆▆▆ The extraneous offense evidence was elicited after the State had presented its case-in-chief. Prior to that time, the State had presented little evidence that went to rebutting appellant's defensive theory. Moreover, other than the question regarding appellant's use of the knife in the prior assault, the State did not raise the issue again during the guilt/innocence phase, nor raise the issue of the prior convictions. Based upon the record, we cannot say that the evidence at issue unfairly prejudiced appellant and influenced the jury to decide the case on an improper basis. Nor can we say that the trial court's determination to admit the evidence was outside the zone of reasonable disagreement. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the evidence and overrule appellant's points of error. The

judgment of the trial court is affirmed.[6]

---

6. Even assuming that the trial court had erred in admitting the extraneous conduct evidence, we cannot conclude that the error would require a reversal. Any error other than constitutional error must be disregarded if it does not effect a substantial right. Tex. R.App. P. 44.2(b); *Peters v. State,* 93 S.W.3d 347, 354 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd). "Erroneous admission of an extraneous offense does not constitute constitutional error." *Id.* In determining whether the error adversely affected the jury's decision, we consider the entire record, as well as the character of the alleged error and how the error might have been considered along with the other evidence in the record. *Id.* Reiterating the reasoning above, because of the vast amount of evidence establishing appellant's guilt, after examining the entire record—including appellant's testimony, Angela's testimony and that of the eyewitnesses—we cannot say that an erroneous admission of the prior misconduct would warrant reversal.