

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00734-CR

Adam Charles **BARBA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR0840
Honorable Christine Del Prado, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Patricia O. Alvarez, Justice
                Beth Watkins, Justice

Delivered and Filed: June 20, 2024

AFFIRMED AS REFORMED

A jury convicted appellant Adam Charles Barba of aggravated sexual assault of a child, and the trial court assessed punishment at life imprisonment. *See* TEX. PENAL CODE ANN. § 22.021. On appeal, appellant contends the trial court erred in admitting extraneous-offense testimony on the grounds that admission was improper under Texas Rule of Evidence 404(b) and that the evidence was unfairly prejudicial under Texas Rules of Evidence 403. *See* TEX. R. EVID. 403; 404(b). We affirm but sua sponte reform the judgment to conform with the jury's verdict.

## BACKGROUND

Appellant was charged with sexually assaulting his great-niece, P.C.,[1] who was thirteen years old at the time of the incident and eighteen years old at the time of trial. In the prosecutor's opening statement to the jury, she began:

> Trust, opportunity, access. Those are all things we covered yesterday in voir dire where certain people have access, control, those things over young children and use them to their advantage. In this case the defendant had three of those, trust, access, and opportunity.

The prosecutor then previewed the anticipated evidence. Defense counsel did not give an opening statement.

Later that day, the jury heard P.C.'s testimony that, on May 26, 2018, appellant was living at P.C.'s family home. That morning, P.C. woke to her nephews leaving her room. As she was falling back asleep, appellant came into her room. P.C. testified that she heard appellant's belt buckle and "felt his middle part over [her] mouth." P.C. also testified that she saw appellant's "middle part" as he turned around to leave her room.

During P.C.'s cross-examination, defense counsel asked her: "Who is George Barba?" P.C. identified him as her uncle. Defense counsel continued: "He's your uncle. You spend time with him too, right?" P.C. affirmed that she did. Defense counsel next asked: "You know he's a registered sex offender?" P.C. responded: "I didn't know." Next defense counsel handed P.C. a document with the headings "Texas Sex Offender Registry Detail" and "Texas Public Sex Offender Registry." The document includes a picture of a male and identifying information for a "Barba, George." Defense counsel asked P.C. to identify the individual in the picture, and P.C. identified him as her uncle George Barba. Defense counsel offered the document into evidence.

---

[1] To protect the privacy of the complainant in this case, this opinion uses initials to refer to her, her mother, and another minor child. *See Baez v. State*, 486 S.W.3d 592, 594 n.1 (Tex. App.—San Antonio 2015, pet. ref'd).

The trial court admitted it over the State's objections and allowed the exhibit to be published to the jury. Defense counsel then asked for a bench conference to discuss potential lines of inquiry. He stated:

> I wanted to do it in a proper way so that we don't say something we're not supposed to. But for her to be testifying, yes, it could be a result of something that happened like this, if it happened. It could be a result of somebody else doing it. In fact, it could also be the result of her being angry at my client for something else.

The trial court instructed defense counsel to proceed with his cross-examination as he thought appropriate, and if the State objected, the court would rule at that time. After the jury returned, the trial court instructed defense counsel to proceed, and defense counsel stated: "No questions, Your Honor." The court then adjourned for the day.

On the next day of trial, before testimony resumed, the State's attorney argued outside the presence of the jury that defense counsel opened the door to testimony the State wished to adduce to rebut the contention that another family member, specifically George Barba, committed the offense or to otherwise establish that the identity of P.C.'s assailant was appellant. Defense counsel was adamant that he had not put forward a defensive theory, arguing: "I have not said, my theory is mistaken identity, this other guy did it instead. The kids think that George [Barba] is really [appellant]. I've offered no defensive theory. None. Zero. Zip." Further, defense counsel argued that the proposed testimony on the matter would be unfairly prejudicial if allowed.

The Court ruled:

> [T]he defense can open the door, defense can open the door in opening statement, defense could open the door in cross-examination. This Court believes that under the way or — in the way that the testimony came forward, that the testimony you elicited from the complaining witness did put forth whether you want to call it your defensive theory or not, a theory of the case that was contrary to the State's theory, that said in essence, it's not this person, but it's this other person. And because of that, now identity of the actual perpetrator is at issue.

After making this ruling, the State proceeded with the examination of its next witness, S.B., a female relative of P.C. and appellant, who was twelve years old at the time of trial. S.B. testified that appellant sexually assaulted her "many" times when she was six and seven years old. S.B. explained that appellant "would put his private part in [her] mouth," sometimes for long periods of time. S.B. also testified to other abuse, including attempted vaginal intercourse and anal penetration by appellant's finger. S.B. affirmed that appellant was the perpetrator of the sexual abuse against her and was the only person who had ever done such things to her.

The trial court instructed the jury that trial was solely on the charges pertaining to P.C. contained in the indictment, and further that,

> With regard to those other acts [of misconduct by the defendant committed against a child other than P.C.] you are instructed that you cannot consider said evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any were committed, and even then you may only consider the same in determining the identity, if any, of the defendant, or to rebut a defensive theory, if it does, and for no other purpose.

The jury found appellant guilty of the offense of aggravated sexual assault of a child, P.C., as charged in the indictment, and the trial court sentenced appellant to a term of life imprisonment.

Appellant now appeals, arguing the trial court erred by admitting the extraneous-offense testimony of S.B. under Rules 403 and 404(b) of the Texas Rules of Evidence.

### STANDARD OF REVIEW

We review trial court rulings on the admissibility of evidence for abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)). A reviewing court is not to disturb a trial court's ruling if it is "within the zone of reasonable disagreement." *See Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). If the trial court's ruling is correct under any theory of law applicable to

the case, we must uphold the judgment. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

### RULE 404(B)

Texas Rule of Evidence 404(b) prohibits the use of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). However, the rule provides, "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2). Admission of evidence under Rule 404(b) is generally within the zone of reasonable disagreement "if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe*, 354 S.W.3d at 469.

For identity to be a valid basis for admitting extraneous-offense evidence, identity must be at issue. *See Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004) (citing *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996)). "An extraneous offense may be admissible to show identity . . . when the defense cross examines witnesses or alleges that someone else committed the crime." *Jones v. State*, No. 10-23-00146-CR, 2024 WL 1664903, at *2 (Tex. App.—Waco Apr. 18, 2024, pet. filed) (citing *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *Lane*, 933 S.W.2d at 519). For example, the Court of Criminal Appeals held in *Page v. State* that defense counsel's cross-examination of a victim to suggest that his 265-pound client was not the victim's 200-pound assailant placed the victim's identification of the assailant at issue. *See Page*, 137 S.W.3d at 78.

Likewise, here, the trial court did not err by allowing S.B.'s testimony because her testimony went to the identity of P.C.'s assailant, which defense counsel had placed at issue. By asking P.C. about George Barba, his status as a sex offender, and P.C.'s time spent with him,

defense counsel placed the assailant's identity at issue. First, "opportunity" and "access" were themes the State introduced by its opening. Although, defense counsel never gave an opening, his question, "You spend time with [George Barba], too, right?", suggests that George Barba may have had an opportunity and access to commit a sexual assault on P.C.[2] Evidence that George Barba was a registered sex offender invited speculation that he could be a reasonably probable alternative assailant. Second, at the bench conference that followed, defense counsel alluded to a line of inquiry regarding whether "[i]t could be a result of somebody else doing it." Third, as the Court of Criminal Appeals aptly put it: "The question of whether defense counsel's cross-examination of [a] victim raise[s] the issue of identity may be best answered with another question: If it was not about identity, what was it about?" *Id*. at 78–79. Here, there is no apparent alternative explanation for defense counsel's line of questioning about George Barba other than to sow doubt as to appellant's identity as the assailant.

Because identity was at issue, the door was open for the State to offer rebuttal testimony of similar extraneous offenses to corroborate the identity of appellant as the perpetrator. *See Hudson v. State*, 112 S.W.3d 794, 801 (Tex. App.—Houston [14th Dist.] 2003, pet ref'd). To be admissible to show identity, an extraneous offense must be "so similar to the offense charged that the offenses are marked as the accused's handiwork." *Lane*, 933 S.W.2d at 519. This similarity can be demonstrated by proximity in time and place *or* by a common mode of committing the offenses. *Id.*

---

[2] In his brief, appellant contends "[t]he defense made no opening statement in this case, thus offering no defensive theory." This assertion is misguided. While a defensive theory can be raised in opening, *see Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001), it also can be raised on cross-examination, *see, e.g.*, *Webb v. State*, 575 S.W.3d 905, 909 (Tex. App.—Waco 2019, pet. ref'd) (holding defensive theory of fabrication was raised on cross-examination when defense counsel "went beyond merely pointing out inconsistencies in [the complainant's] story").

S.B. testified to an extraneous offense with similar circumstances to the charged offense. She testified that appellant, who was her uncle, lived with her and her family in 2018, when she was "six and seven." S.B. explained that, while she was alone with appellant, he would "do inappropriate stuff to [her]." Specifically, among other sexually assaultive conduct, S.B. testified that appellant "would put his private part in [her] mouth." P.C. likewise testified that appellant sexually assaulted her in 2018. On May 26, 2018, appellant was living at P.C.'s home. When P.C. was alone in her room, appellant came in. He pulled down his pants and put "his middle part" in P.C.'s mouth.

We hold S.B.'s testimony of the extraneous offense is sufficiently similar to the charged offense to be used to corroborate identity, which was at issue; therefore, the trial court did not abuse its discretion by allowing this evidence to come in under Rule 404(b).

## RULE 403

Appellant nevertheless contends that the trial court erred by admitting extraneous-offense testimony because it should have been excluded under Texas Rule of Evidence 403 as unfairly prejudicial.

Rule 403 provides:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

When undertaking a Rule 403 analysis, the trial court must balance:

(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). In application, these factors may blend together. *Id.* at 642.

"Probative value" refers to "how strongly [an item of evidence] serves to make more or less probable the existence of a fact of consequence to the litigation — coupled with the proponent's need for that item of evidence." *Id.* at 641. "[A] successful conviction [on a sexual offense] often depends primarily on whether the jury believes the complainant, turning the trial into a swearing match between the complainant and defendant." *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002) (citation and brackets omitted). In a prosecution for a sexual offense against a child, testimony of similar events can provide a "small nudge towards contradicting . . . defensive theories" and proving that the event did indeed occur. *Id.* (holding trial court did not abuse discretion by allowing another child's testimony regarding "an event quite similar to the charged event" to counteract testimony "that appellant [was] not the type to abuse children and did not and could not have done so").

Here, S.B. testified to a similar assault, involving oral penetration, and, more generally, to various assaults committed when appellant had opportunity and access to S.B. alone. S.B.'s testimony was probative as to the identity of P.C.'s assailant, and S.B.'s positive identification of appellant as her assailant contradicted appellant's defensive theory that P.C. misidentified her assailant. *Cf. Burton v. State*, 230 S.W.3d 846, 851 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("[T]he charged and extraneous offenses were identical in several key respects and thus highly probative on the issue of identity."). The State's need for the evidence was substantial in the absence of eyewitnesses, DNA, or other strong corroborating evidence. *Cf. Johnson v. State*, 68 S.W.3d 644, 651–52 (Tex. Crim. App. 2002) (affirming admission of extraneous-offense evidence tending to prove identity because — despite DNA evidence, fingerprints, and appellant's written and oral confessions — extraneous-offense evidence consisting of eyewitness testimony

"was very probative and added a significant dimension to the evidence not otherwise before the jury"). While it is true, as appellant argues, that P.C. never wavered in identifying appellant as her assailant, appellant's interjection of identity as an issue placed P.C.'s perception and credibility into dispute. S.B.'s corroborating testimony could have provided the small nudge needed to prove identity beyond a reasonable doubt for the jury. *See Wheeler*, 67 S.W.3d at 888.

While S.B.'s testimony was inherently inflammatory and prejudicial, Rule 403 is concerned only with "unfair prejudice." TEX. R. EVID. 403; *see Pawlak v. State*, 420 S.W.3d 807, 809 (Tex. Crim. App. 2013) ("We have held that sexually related bad acts and misconduct involving children are inherently inflammatory."). "Unfair prejudice" means "a tendency to suggest decision on an improper basis" such as "hostility or sympathy without regard to the logical probative force of the evidence." *Gigliobianco*, 210 S.W.3d at 641. Moreover, Rule 403 permits exclusion only when the probative value of evidence is "substantially outweighed" by "unfair prejudice" or other improper matters. TEX. R. EVID. 403; *see De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) ("[B]alance is always slanted toward admission, not exclusion, of otherwise relevant evidence.").

Here, prejudice was limited in several ways. First, the trial court gave a limiting instruction to counteract any tendency of the extraneous-offense testimony to confuse, distract, be given undue weight, or to suggest an improper basis for a decision. The trial court's limiting instruction focused the jury to consider S.B.'s testimony only if it determined an offense or offenses were committed by appellant beyond a reasonable doubt and only for purposes of determining identity or to rebut a defensive theory. Appellant has not suggested any reason the limiting instruction would be less effective here than in other cases in which identity is disputed. *See Lane*, 933 S.W.2d at 520 (affirming admission of extraneous-offense evidence where identity was an issue and limiting instruction was given). Nor did S.B.'s testimony consume an inordinate amount of time or repeat

evidence already admitted. S.B.'s testimony before the jury comprised twenty-two pages of the reporter's record, which consisted of approximately three hundred pages of testimony and argument before the jury. While P.C.'s testimony was of similar duration, nearly all other trial testimony concerned only the sexual assault of P.C., as indicted.

We hold the trial court reasonably could have concluded that the probative value of the extraneous-offense evidence was not substantially outweighed by the danger of unfair prejudice to appellant; therefore, we affirm the trial court's decision to allow S.B.'s testimony under Rule 403 as within the zone of reasonable disagreement. *See* TEX. R. EVID. 403; *Wheeler*, 67 S.W.3d at 889.

## REFORMATION

The judgment signed by the trial court states the jury found appellant guilty of capital murder. The jury's verdict, however, states: "We, the Jury, find the defendant, Adam Charles Barba, guilty of the offense of aggravated sexual assault of a child as charged in the indictment." Because a discrepancy exits, we sua sponte reform the judgment to conform with the jury's verdict. *See* TEX. CODE CRIM. PROC. ANN. art. 42.01 (specifying judgment shall reflect the jury's verdict); *Chamblee v. State*, 371 S.W.2d 396, 397 (Tex. Crim. App. 1963) (reforming judgment to conform with jury's verdict); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.) ("Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in trial court; we may act sua sponte and may have a duty to do so.").

## CONCLUSION

As reformed, the judgment of the trial court is affirmed. *See* TEX. R. APP. P. 43.2(b).

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH