**Opinion filed July 3, 2025**



## In The

# Eleventh Court of Appeals

_____

### No. 11-24-00017-CR

_____

### RICKY RICARDO LEE HERNANDEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**
**Dawson County, Texas**
**Trial Court Cause No. 22-8962**

### M E M O R A N D U M  O P I N I O N

A jury found Appellant, Ricky Ricardo Lee Hernandez, guilty of aggravated assault with a deadly weapon and causing serious bodily injury to his ex-girlfriend, Anastasia Sanchez, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(b)(1) (West Supp. 2024). The jury assessed Appellant's punishment at sixty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice, and the trial court sentenced him accordingly. In four issues, Appellant

challenges evidentiary rulings of the trial court admitting Sanchez's testimony concerning the couple's previous volatile relationship. We affirm.

*Background*

Sanchez and Appellant share two children together. Over Appellant's objections under Article 38.371 of the Texas Code of Criminal Procedure and Rules 402, 403, and 404(b) of the Texas Rules of Evidence, the State adduced the following testimony during the guilt/innocence phase of trial. *See* TEX. CODE CRIM. PROC. ANN. art. 38.371 (West Supp. 2024); TEX. R. EVID. 402, 403, 404(b). Sanchez testified that, in April 2020, when she was pregnant with their second child, Appellant "kicked [her] in [her] face" and "beat [her] up". Sanchez then described four more instances of volatility in the relationship. About four months after the assault during her pregnancy, Sanchez had been hiding in her bedroom[1] when Appellant grabbed her by her ears, causing her to bleed. In another incident, which occurred on Christmas Eve in 2020, Appellant wanted to go to his sister's home, but Sanchez did not. Appellant took Sanchez out to a field and "pulled a little knife out on [her]," blaming her for his actions. Then, in April 2021, the two got into an argument and in his anger Appellant "kept getting in [her] face" and "almost hit [her]." Sanchez testified that toward the end of their relationship, she began hiding knives and forks when Appellant would start drinking. Sanchez explained that she hid knives out of fear that Appellant would "pull one out on [her]." At some unspecified point, Appellant also harassed her at her workplace.

By August 2021, the two were no longer living together. Sanchez testified that she had contacted Appellant on the evening of August 8, 2021, because she needed to get her glasses for driving that she had left behind at his house. Sanchez arrived at Appellant's uncle's residence, and as soon as she put her vehicle in park,

---

[1]Sanchez was not asked to elaborate on the circumstances that led to her hiding.

2

Appellant rushed toward her. Appellant took her keys and phone and forced her inside the residence. Sanchez testified that Appellant was fixated on going through her phone. Then, while inside the living room area, Appellant went to the side of the couch, grabbed a knife, and started stabbing her. Appellant ignored Sanchez's pleas to stop and told her that it was her fault that she was going to die and that he was going to end up in prison. Sanchez testified that when Appellant finally stopped, she picked herself up off the couch and attempted to leave. Sanchez stated that the last thing she remembered was putting her hand on Appellant's chest and asking him to call an ambulance.[2] Sanchez was care flighted from Lamesa to Lubbock, where she was hospitalized for over a week.

On cross-examination, Sanchez was questioned regarding communication with Appellant before and after the charged offense, and Sanchez admitted to "put[ting] money on his books" up until three months before trial. Although no longer in a relationship, Sanchez explained that she "still care[s] and love[s]" Appellant.

Scott Bradley, a former lieutenant at the Lamesa Police Department, located the assault weapon, a bent kitchen knife, behind a couch in the living room. Bradley testified that upon moving the couch, he found the knife next to an "extremely large" pool of blood. Bradley stated that Sanchez told him that Appellant stopped stabbing her when the knife bent. Although Appellant remained at the scene until law enforcement arrived, he declined to answer any questions. Photographs were admitted into evidence showing blood splatter on the living room floor and couch. Also admitted were photographs of Sanchez's injuries post-surgery. The photographs depicted knife wounds across Sanchez's face, neck, chest, arms, and hands.

---

[2]The 9-1-1 recording was admitted into evidence at trial. Appellant can be heard telling the operator, "Yeah, I just stabbed my wife."

*Standard of Review*

In four issues, Appellant argues the trial court abused its discretion in overruling his objections under Article 38.371 of the Texas Code of Criminal Procedure and under Rules 402, 403, and 404(b) of the Texas Rules of Evidence.

Whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *McDaniel v. State*, 698 S.W.3d 625, 639 (Tex. App.—Eastland 2024, pet. ref'd). We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Irsan v. State*, 708 S.W.3d 584, 616 (Tex. Crim. App. 2025). The trial court's decision will be upheld as long as it was within the "zone of reasonable disagreement." *Id.* "We will not reverse a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct on any theory of law that finds support in the record and is applicable to the case." *McDaniel*, 698 S.W.3d at 639 (citing *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016)).

*Article 38.371, Rule 402, and Rule 404(b) Complaints*

We begin by discussing Appellant's challenge to the applicability of Article 38.371 and his contention that the trial court abused its discretion in admitting the complained-of evidence because the evidence was not relevant and barred under Rule 404(b) as character conforming evidence. *See* CRIM. PROC. art. 38.371; TEX. R. EVID. 402, 404(b).

A. *Applicable Law*

"Evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence." *Bluntson v. State*, No. AP-77,067, 2025 WL 1322702, at *7 (Tex. Crim. App. May 7, 2025) (citing TEX. R. EVID. 401). "Evidence need not prove or disprove a particular fact by itself to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving a fact of consequence." *Id.* (citing *Gonzalez v. State*,

544 S.W.3d 363, 370 (Tex. Crim. App. 2018) then citing *Henley v. State*, 493 S.W.3d 77, 84 (Tex. Crim. App. 2016) ("Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis—a pertinent hypothesis being one which, if sustained would logically influence the issue.")). Pursuant to Rule 402, irrelevant evidence is inadmissible. TEX. R. EVID. 402.

Article 38.371 permits each party to offer "evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense" for which the defendant is on trial, if the alleged victim is a current or former member of the defendant's family or household, or a person with whom the defendant had or did have a dating relationship. CRIM. PROC. art. 38.371; *see* TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, 71.005 (West 2019).

The nature of the relationship—such as whether the victim and the accused were married, estranged, separated, or divorced—is "clearly admissible under this Article." *Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006). Further, prior acts of violence between the victim and the accused may be offered to illustrate the nature of the relationship. *Id.* For example, extraneous-offense evidence held to be admissible under Article 38.371 has included proof that: (1) explains why a complainant of domestic violence is unwilling to cooperate with the prosecution; (2) confirms the victim's initial—and later recanted—statements to police; or (3) contextualizes the nature of the relationship between the complainant and the assailant. *Rodriguez*, 678 S.W.3d at 386.

Sanchez's testimony regarding Appellant's past abuse and aggressive behavior provided the jury with important insight into the nature of their violent and volatile relationship. *See, e.g.*, *Baxter v. State*, No. 02-22-00258-CR, 2023 WL 8268292, at *9 (Tex. App.—Fort Worth Nov. 30, 2023, pet. ref'd) (mem. op., not designated for publication). The extraneous-offense evidence was also relevant

to Appellant's intent, and absence of mistake, or lack of accident. *See* TEX. R. EVID. 404(b); *Baxter*, 2023 WL 8268292, at *9.

Evidence proffered under Article 38.371 is "subject to the Texas Rules of Evidence," including Rule 402, 403, and 404. It does not permit the presentation of character evidence otherwise inadmissible under the rules or other applicable law. CRIM. PROC. art. 38.371(b), (c).

Rule 404 of the Texas Rules of Evidence "regulates the admissibility of character conformity evidence—evidence of a person's character used to prove that he behaved in a particular way on a given occasion." *Bluntson*, 2025 WL 1322702, at *8 (quoting TEX. R. EVID. 404(a)(1) (evidence of person's character "is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait") then quoting TEX. R. EVID. 404(b)(1) (Evidence of extraneous acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.")). Evidence that is solely used for the purpose of proving bad character is prohibited under Rule 404. *Id.* "In separating character conformity evidence from non-character evidence, Rule 404 incorporates the concept of relevance." *Id.* "Therefore, in the context of Rule 404, if character conformity evidence contributes even incrementally to a permissible non-character inference, Rule 404 does not bar its admission." *Id.*; *see* TEX. R. EVID. 404(b)(2) ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

"'Rule 404(b) is a rule of inclusion rather than exclusion.' The rule excludes only that evidence that is offered (or will be used) *solely* for the purpose of proving bad character and hence conduct in conformity with that bad character." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) (emphasis added) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). The

exceptions listed in Rule 404(b) are neither mutually exclusive nor exhaustive. *Id.* For example, "evidence of other crimes or wrongs may be admissible if it tends to establish some elemental fact, such as identity, intent, or knowledge; tends to establish some evidentiary fact, such as motive, opportunity, plan, or preparation, leading inferentially to an elemental fact; or rebuts a defensive theory." *Gonzalez v. State*, 541 S.W.3d 306, 310 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1990)). When the trial court determines that the evidence has independent relevance, the trial court may admit the evidence and, as here, instruct the jury that the evidence is limited to the specific purpose the proponent advocated. *Id.*

B. *Analysis*

Appellant contends that the evidence at issue is inadmissible because it is irrelevant. *See* TEX. R. EVID. 402. He additionally argues that since he did not challenge Sanchez's credibility or the nature of their relationship, the evidence was impermissible character evidence, which should have been excluded under Rule 404(b) and Article 38.371(c). *See* CRIM. PROC. art. 38.371(c); TEX. R. EVID. 404(b). The State responds that this evidence is admissible under the relevant rules as it demonstrated a continuing pattern of escalating violence, helped contextualize the abusive nature of the relationship, and established Appellant's intent in committing the instant offense. We agree with the State.

To convict Appellant of aggravated assault-family violence as charged, the State was required to prove beyond a reasonable doubt that Appellant intentionally, knowingly, or recklessly caused serious bodily injury to Sanchez, a person with whom he had a past or present dating relationship or who was a member of his family or household. *See* PENAL § 22.02(a)(1), (b)(1)(A); *see Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023). The offense, as charged, did not necessitate that the relationship be ongoing at the time of the offense. *See* FAM. § 71.0021(b).

7

"'Article 38.371, which applies to family-violence prosecutions, provides another non-character-conformity purpose for admitting extraneous-offense evidence'—to show the nature of the relationship between the complainant and the accused." *Valdesgalvan v. State*, 664 S.W.3d 407, 413 (Tex. App.—Fort Worth 2023, no pet.) (quoting *James v. State*, 623 S.W.3d 533, 545 (Tex. App.—Fort Worth 2021, no pet.)). Thus, Sanchez's statements regarding Appellant's prior acts of violence and relationship volatility was not solely offered to show character conformity; rather, the evidence went to a relevant, material issue—i.e., the nature of the relationship between Sanchez and Appellant—*and* established Appellant's intent in committing the charged offense. *See Arevalo v. State*, 675 S.W.3d 833, 848–49 (Tex. App.—Eastland 2023, no pet.) (concluding past evidence of assaults between the victim and [a]ppellant were admissible under Article 38.371 to illustrate the nature of the relationship between the victim and [a]ppellant); *Hudson v. State*, 112 S.W.3d 794, 801 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (concluding evidence of prior assault was relevant because it "tended to make appellant's guilty intent more likely than it otherwise would have been"); *see also Zarate v. State*, No. 11-17-00259-CR, 2019 WL 4786028, at *5 (Tex. App.—Eastland Sept. 30, 2019, pet. ref'd) (mem. op., not designated for publication) (concluding evidence that appellant had pulled a firearm on the victim during a previous encounter was admissible under Rule 404(b) to show the nature of their relationship). Moreover, it provided necessary context to assist the trier of fact in understanding the actions of both Sanchez and Appellant. *See Arevalo*, 675 S.W.3d at 848–49; *McDonnell v. State*, 674 S.W.3d 694, 702 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("'Areas of relevant and admissible extraneous-offense evidence that complies with [A]rticle 38.371' and that serve non-character-conformity purposes in compliance with Rule 404(b)" includes evidence to explain the victim's statements or actions or "contextualize[] the nature of the relationship

between victim and assailant." (quoting *Fernandez v. State*, 597 S.W.3d 546, 565 (Tex. App.—El Paso 2020, pet. ref'd))); *Valdesgalvan*, 664 S.W.3d at 413–14; *Gonzalez*, 541 S.W.3d at 312.

Having determined that the challenged testimony was relevant and not solely offered to show character conformity, we conclude the trial court did not abuse its discretion in admitting the evidence against Appellant's Article 38.371, Rule 402, and Rule 404(b) objections. *See Irsan*, 708 S.W.3d at 616. We overrule Appellant's first, second, and third issues.

*Rule 403 Complaint*

We next consider whether admission of the evidence of previous incidents of family violence nonetheless was an abuse of discretion in light of Appellant's Rule 403 objection. *See* TEX. R. EVID. 403; CRIM. PROC. art. 38.371(b), (c); *Luna v. State*, 687 S.W.3d 79, 103 (Tex. App.—Eastland 2024, pet. ref'd). In Appellant's fourth issue, Appellant argues that Sanchez's testimony was unfairly prejudicial. *See* TEX. R. EVID. 403.

A. *Applicable Law*

Rule 403 of the Texas Rules of Evidence "excludes otherwise relevant evidence when the costs of admission outweigh its utility." *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). In accordance with the rule, "[t]he [trial] court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. We utilize the *Montgomery* factors in our determination of whether evidence is admissible under Rule 403: "(1) the strength of the evidence's probative value, (2) the potential for the evidence to 'impress the jury in some irrational but nevertheless indelible way,' (3) [t]he amount of time required at trial to develop the evidence, and (4) the proponent's need for the

evidence." *Hart*, 688 S.W.3d at 891 (quoting *Montgomery*, 810 S.W.2d at 389–90). In any given case, "these factors may well blend together in practice." *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Moreover, the balancing of these factors "is always slanted toward admission, not exclusion, of otherwise relevant evidence." *Irsan*, 708 S.W.3d at 616 (quoting *De La Paz*, 279 S.W.3d at 343); *Luna*, 687 S.W.3d at 98 ("Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial.").

B. *Analysis*

Applying these factors, we cannot say that the trial court abused its discretion by admitting the extraneous-offense evidence.

The first and last factors in the Rule 403 balancing test require that we identify the strength of the probative value and the State's need for the evidence, respectively. *See Hart*, 688 S.W.3d at 891. At the outset, we note that apart from Sanchez, there were no witnesses to the assault. Not only does the extraneous-offense evidence that Appellant had previously assaulted and harassed Sanchez and recently threatened to assault Sanchez with a knife contextualize the volatile relationship between the two, it serves to make the fact of consequence—that is, Appellant's ability to harm Sanchez—more likely. *See Hart*, 688 S.W.3d at 893 ("[E]vidence is probative if it 'tend[s] to make a fact more or less probable.") (quoting TEX. R. EVID. 401(a)); *Luna*, 687 S.W.3d at 103 (Extraneous-act evidence that showed the appellant's "years of domestic abuse against [the victim] assisted the jury by (1) illustrating [the appellant's] motives, (2) shedding light on the relationship's dynamics, (3) establishing identity, or (4) emphasizing the true version of events."); *see also Dragoo v. State*, No. 05-24-00248-CR, 2025 WL 1334639, at *4 (Tex. App.—Dallas May 7, 2025, no pet.) (mem. op., not designated for publication) (concluding State's need for extraneous evidence of prior assault was great as there were no eyewitnesses

to appellant's assault); *Fillmore v. State*, No. 03-22-00504-CR, 2024 WL 3586040, at \*5 (Tex. App.—Austin July 31, 2024, no pet.) (mem. op., not designated for publication) (concluding the same); *Hill v. State*, No. 11-13-00069-CR, 2015 WL 252316, at \*7 (Tex. App.—Eastland Jan. 15, 2015, pet. ref'd) (mem. op., not designated for publication) ("As important measures of probative force, we consider the closeness in time, the presence of similarities between the charged and the extraneous offense, and the strength of the evidence to prove the extraneous offense." (first citing *Montgomery*, 810 S.W.2d at 390; then citing *Robinson v. State*, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985) (op. on reh'g))). The evidence aided in the jury's determination of the credibility of the witnesses and provided necessary context. *See Luna*, 687 S.W.3d at 103. Thus, these factors weigh in favor of admission.

We next examine "how much trial time was dedicated to the development of the evidence such that its introduction caused undue delay." *Hart*, 688 S.W.3d at 893 (citing *Montgomery*, 810 S.W.2d at 389–90). "[T]he concern is the extent to which the jury is distracted from considering the charged offense." *Id.* Therefore, "the time needed to develop the character evidence necessarily includes any testimony introduced regarding the evidence, including cross-examination, redirect examination, and any rebuttal offered by the defense in response to the evidence." *Id.* The time needed to develop Sanchez's testimony concerning the incidents of past abuse or relationship volatility amounted to less than four pages of the record out of two days of testimony; this extraneous-offense evidence was not elicited from any other witnesses. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (holding that extraneous-offense testimony amounting to "less than one-fifth" of trial testimony favored admission); *Herrera v. State*, 676 S.W.3d 896, 910 (Tex. App.—Eastland 2023, no pet.) (concluding that time spent on the incident at trial was "not short" nor "inordinate," and therefore, this factor weighed in favor of admission).

However, Sanchez's objected-to testimony was raised sporadically throughout the State's closing argument. *See Inthalangsy v. State*, 634 S.W.3d 749, 759 (Tex. Crim. App. 2021) (reviewing the transcript of the State's closing argument in its Rule 403 analysis); *Price v. State*, No. 11-22-00195-CR, 2023 WL 6627127, at \*5 (Tex. App.—Eastland Oct. 12, 2023, pet. ref'd) (mem. op., not designated for publication) (same). We therefore consider this factor neutral.

Regarding the second factor, the phrase "unfair prejudice" in Rule 403 "refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco*, 210 S.W.3d at 641 (citing *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)). While we acknowledge that extraneous-offense evidence of prior assaults, threats, or mistreatment may be inflammatory and consequently prejudicial, Rule 403 does not call for the exclusion of all prejudicial evidence; rather, it only allows exclusion of *unfairly* prejudicial evidence. *Wishert v. State*, 654 S.W.3d 317, 334 (Tex. App.—Eastland 2022, pet. ref'd); *see* TEX. R. EVID. 403. The objected-to evidence here related to the same complainant, was not too remote in time, and "no more serious than the allegations forming the basis [of] the indictment." *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd). Therefore, although Sanchez's testimony may have been prejudicial, Appellant has not demonstrated that it was *unfairly* prejudicial. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) ("[T]he plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial."). This factor weighs in favor of admission.

Further, the trial court instructed the jury not to consider any acts or transactions committed by Appellant unless the jury found and believed beyond a reasonable doubt that Appellant committed such actions. These instructions equipped the jury to properly weigh the extraneous-offense evidence and minimized

the risk of the jury improperly relying on such evidence in reaching its verdict. *See Herrera*, 676 S.W.3d at 909. We presume that the jury followed the trial court's instructions in the charge. *See id.* (citing *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005)).

Based on our review of the evidence in light of the relevant 403 factors, we conclude that the trial court was within the zone of reasonable disagreement in determining that the probative value of the extraneous-offense evidence was not substantially outweighed by its prejudicial effect. *See Montgomery*, 810 S.W.2d at 390–92; *see also Perkins v. State*, No. 11-18-00037-CR, 2023 WL 402176, at \*4 (Tex. App.—Eastland Jan. 26, 2023, pet. ref'd) (mem. op., not designated for publication). We overrule Appellant's fourth issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

July 3, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.